JOHN and NELSON FOOT *vs.* PHILIP TEWKSBURY.

ADDISON.
*January,*
1829.

The *lien* which an Attorney in a suit has on a judgment for his costs does not prevent the parties from abandoning the suit altogether, though they have notice of the *lien.*

That intoxication, to avoid a contract, must disable a man to know the consequences of his agreement.

This was an *Audita Querela,* stating a judgment recovered by the defendant, against the complainants, before a Justice of the Peace, in an action for an assault and battery ; an appeal from that judgment, and a settlement by the mutual agreement of the parties, each agreeing to abandon the suit, and neither paying any thing to the other ; and that *Tewksbury* afterwards procured an affirmance of the judgment in the County Court, and obtained execution, &c. and praying that both judgment and execution might be set aside, and holden for nought.

On trial in the County Court, upon this complaint, a verdict was returned against *Tewksbury.* Exceptions were taken to the decision and charge of the County Court on said trial, and a case agreed on by the parties was brought to this Court for adjudication.

By the case the following facts appear : The plaintiffs, on the trial of the *Audita Querela,* in the County Court, proved that, after the rendition of the judgment by the Justice of the Peace, and before the session of the Court to which the same was appealed, the said suit was settled by the parties, and that *Tewksbury* agreed that the same should not be entered in Court, or further prosecuted—no money being paid by either party, but both agreeing to abandon the action, and that each should pay his own costs.

The defendant then offered to show, that, after the rendition of said judgment before the Justice, and before the said supposed settlement, the attornies for *Tewksbury,* who commenced the suit before the Justice, gave the (then) defendants notice, that they had a *lien* upon the judgment, rendered by said Justice in favor of defendant, for their costs, and that they must not pay the same to *Tewksbury.* But the Court decided the testimony was inadmissible.

The defendant then offered evidence tending to show, that, at the time of said supposed settlement, he was intoxicated. The counsel for the defendant, requested the Court to charge the jury, that if, at the time of said supposed settlement, the defendant was, by intoxication, deprived of his ordinary judgment and capacity to contract, the said agreement of settlement would not be binding. But the Court charged the jury, that if *Tewksbury* was intoxica-

N

ted at the time ef said agreement to settle, so that he had not the same capacity to contract that he would have if sober, still, if he was not so drunk as not to know the consequences of his agree-ment to settle, he would be bound by such agreement.

*Argument in support of the exceptions.*—With regard to the first point, it is insisted, that the attornies, who commenced the suit and prosecuted it to judgment, acquired a *lien* for their costs, which the Court will protect. The English doctrine of protect-ing the attornies' *lien* was fully established in *Bates* and *Chipman* vs. *Heartt*, 2 *Aiken*, 162. It can make no difference that the suit was commenced before, and the judgment rendered by, a Jus-tice of the Peace. For as the doctrine of *liens* is founded on the equitable right that the attorney, by his services and advances of monies, acquires in the judgment, it is entitled to the same protec-tion in a suit before a Justice as in a suit in the County Court ; and, in the case in question, this Court had appellate jurisdiction. Nor can it be material that the judgment was not final. For in a suit commenced in this Court, after judgment, though the case be open to review, the attornies' *lien* will be protected. That noth-ing was paid, does not vary the case. For, although he might discharge his own interest in the judgment, he had no right to dis-charge his attornies' interest.

As it respects the second point, it is contended—that, when a man is so much intoxicated as to be incapable of exercising his or-dinary judgment, he is not bound by his contract. The reasons in *Barret* vs. *Buxton* would bring us to this conclusion. In that case intoxication is likened to insanity. In the case of insanity, it is not necessary to shew the insanity to be complete and entire : any degree of insanity, that affects the judgment and incapacitates it for weighing consequences, is sufficient. *Barret* vs. *Buxton*, 2 *Aiken*, 168. A man in a state of intoxication may know, that, in giving a conveyance of land he parts with the property, and thus be said to know the consequences of the act, when, at the same time, he is wholly incapable of forming a proper judgment of the propriety of the act. If the language of the charge is law, then, a man may cheat another, in a partial state of intoxication, out of fifty dollars with impunity ; but if he is so far intoxicated as to part with one hundred dollars, the Court will relieve him from his contract. The reasoning, which applies to one case, applies with equal force to the other.

*Argument for the complainants.*—1. The doctrine of an attor-ney's *lien* has never been extended to a Justice's Court.

ADDISON,
January,
1829.

Foots
vs.
Tewksbury.

2. An attorney's *lien* attaches only after judgment. The judgment of the Justice was vacated by the appeal, and it would be going too far to say, that parties, having a litigated suit pending, should be prevented from compromising because of the attorney's *lien*. Indeed no case has gone so far, in protecting the attorney's *lien*, as to forbid a compromise, *pendente lite*. This case, it will be observed, was not a mere matter of collection; but an action for an assault and battery, and in its nature disputable.

As to the charge of the Court, it may be remarked, that the exception does not involve the general question, whether intoxication may be a defence to a contract. This general rule seems now to be settled. But the exception involves the question, what degree of intoxication is necessary for this purpose. And, here, we can adopt no better criterion than the one actually adopted by the Court in this case, and the one adopted in analogous cases; viz. if the party is, at the time, capable of comprehending the nature and consequences of the contract, he is bound.

HUTCHINSON, J. delivered the opinion of the Court. Two questions, only, are presented in this case. The first is, whether the attornies of the original plaintiff had such a *lien* upon the costs, of which they gave notice to the defendants, that a settlement, such as was made by the parties in this case, was unavailing, and could not prevent the affirmance of the judgment in the county court for the support of the *lien?* Second, whether the instructions to the Jury were correct, upon the testimony about intoxication.

The cases in which the Court protect the *lien* of an attorney for costs, are those in which it is rendered certain that money is due to the client, nominally, which the attorney, as between him and his client, ought to receive. The attorney, by his labors, and, possibly, by his advances of money to the clerk and to witnesses, recovers a judgment in favor of his client which includes items for these same services and expenditures. Now, if the client is poor and unable to pay his attorney, it is inequitable and improper that his client should receive this money and prevent its going to the attorney. If the attorney gives notice to the party against whom the judgment is recovered, that he intends to rely upon his *lien*, and claims that the money be paid to him, and not to his client, it would be equally inequitable and improper, that he, after such notice, should pay to the client, and defeat the *lien* of the attorney. In such a case, the *lien* of the attorney is protected. But no case is shown, nor is any recollected by the Court, in which this principle interposes to prevent an amicable adjustment of a litigated suit, before a final judgment in the same.

ADDISON,
*January,*
1829.

Foot et al.
*vs.*
Tewksbury.

The attorney has no *lien* upon any thing, but what is due, nominally, to his client, after a judgment before the Justice, which, while in force, showed a debt due to the client, upon which the *lien* could attach. As soon as an appeal was entered, that judgment was done away, and the *lien* was suspended. It had become uncertain whether there ever would be a debt due to the same party. At the next trial the judgment might be against him. It would be going too far, to decide, that the parties may not settle an uncertain dispute, by reason of the intervention of the attorney's *lien*, which, if there were no settlement, might have nothing to which it could remain attached.

If in such a case, money was in fact paid to the client, which belonged to the attorney, and notice given, the voluntary payment might be deemed equal to a judgment, in rendering the matter certain; yet, even then, pursuing the action might not be the correct remedy. But here, no money was paid. The parties agreed to stop where they were, rather than proceed to expend more money, in what they both deemed an uncertain warfare. We consider the testimony about the attorney's *lien* to have been correctly excluded. The same question came up on a motion in 1 *Taunton*, 341, *Chapman, et al.* vs. *Haw*, and the decision is exactly in point.

We, also, consider the instructions to the jury correct, upon the other point. These appear to draw the line very fairly, between that degree of intoxication which prevents a man from knowing the consequences of his contracts, and that which does not so prevent. If he was capable of knowing the consequences of his contract, say the Court, he is bound, though he might not have the same capacity to contract, that is, might not judge as well in making contracts, as if entirely sober. There is a wonderful variety in the capacity and judgment of different men, in their best state, about making contracts; yet the contracts of all are equally binding under similar circumstances. But when we find a man so destitute of capacity, as not to know the consequences of his contracts, and makes such as he would not make, if he did know the consequences, his contracts are ranked with those of the insane, the idiot and the lunatic; and treated as of no binding force. When a man, by intoxication, becomes of this class, for a period, he is to be protected from the contracts made at such a time: and this for the plain reason, that, when such is the case, it must be as well known to the person trading with him, as to the spectators afterwards used as witnesses: and they must not be permitted to make profit by contracts under those circumstances; when, perhaps, the person, with whom he contracts, is the only

one present, who does not discover his unfitness thus to make contracts. In the present case, the verdict of the jury, under the instructions given, must have settled the point, that the present defendant was not in such circumstances, at the time when he settled the action in question.

ADDISON,
January.
1829.

Foot et al.
vs.
Tewksbury.

The Judgment of the County Court is affirmed.

*Phelps*, for the complainant.

*Bates* and *Linsley*, for the defendant.