# Fisher *versus* Knox.

If the assignee of a moiety of a judgment does not have his interest therein marked on the docket, the bond being subsequently in the possession of the obligee, who assigns all his interest in the judgment bond, without notice being had by the second assignee of the former assignment, and notice of assignment to the second assignee is marked on the record, the first assignee will be postponed in favor of the second.

If an attorney does not offer to pay to his client in a reasonable time all the money which he was bound to pay, he is not entitled to compensation for his trouble.

ERROR to the Common Pleas of *Dauphin county*.

This was an action on the case by Fisher *vs.* Knox for money had and received by the defendant as the attorney of the plaintff, not exceeding $300.

Richard Corzatt executed a bond dated on 21st April, 1842, in favor of Small, conditioned for the payment of one hundred and twenty dollars on the first day of April next, viz: 1843. It contained an authority to confess judgment.

[Fisher *v.* Knox.]

Judgment was entered thereon in favor of Small *vs.* Corzatt in the Court of Common Pleas of Tioga county to June term, 1842, No. 91, entered April 25, 1842.

The bond being in the possession of Small, he by assignment dated on the 4th day of May, 1843, assigned to Fisher all his estate, right, title and interest of and to the within judgment bond, and all moneys due and to become due to him on the same. At this time no notice had been given on the record of the judgment that any other person than Small had any interest in it, nor was there any such notice on the bond itself. There was an indorsement on the bond, "Filed April 25th, 1842." On the record of the judgment on the warrant on this bond was marked, "The above judgment assigned to John A. Fisher, says attorney for plaintiff. Assignment of one-half of the above judgment to Edward J. Smith, filed in No. 86 of this term, dated May 14, 1842."

Mr. Fisher, by letter dated June 28, 1843, wrote to Knox that he held by assignment the judgment bond in question, stating that he was the indorser of Mr. Small, and suggesting to him if not paid previous to the next court to issue a *fi. fa.* To this Knox replied under date of July 4, 1843, suggesting to send the bond up and have it filed of record, and the judgment will then be marked for your use. A *fi. fa.* was issued in August, 1843, the land levied. *Alias vend.* was issued November 18, 1844, and the property was sold. Knox, under date of October 28, 1843, wrote to Fisher, and concluded his letter by stating, "One-half of this judgment was assigned by Small to Edward J. Smith on the 21st August, 1842."

On the trial there was given in evidence on the part of defendant, an assignment by Small to Smith, dated 14th May, 1842, "for one equal moiety or half part of the judgment No. 91, June term, 1842, of the Court of Common Pleas of Tioga county, and other judgments entered in same court."

It seemed from the correspondence that the judgment had been placed in the charge of Knox for collection by Small before he assigned the claim to Fisher.

In October, 1843, Knox wrote to Fisher, *inter alia,* that he did not think the property will sell for cash at any reasonable price, will probably have to be bid in for the plaintiff.

By letter dated December 1, 1843, Fisher replied, instructing Knox "that if the property will not sell for the amount of my judgment, or something near that amount, to let the sheriff return it unsold for want of bidders, and under no circumstances to have it knocked down to me me under *my* judgment. I say *my judgment* because I do not recognize Edward J. Smith, to whom you say one-half of this judgment was assigned by Small, on the 21st August, 1842, as having any interest in or control over that judgment," &c.

[Fisher *v.* Knox.]

In December, 1844, the property was again exposed to sale, and bid in for $100 dollars by defendant, who afterwards sold it again, and in a letter to Fisher dated in November, 1847, he states, *inter alia,* "the reason why I sold and purchased the land mentioned in your letter, was that the man against whom the bond was had never paid any thing and was never likely to, and resort to the land was the only possible way to ever get any thing on the bond, and when it was advertised no one would bid any thing, and therefore I was compelled either to have the writ returned property not sold, or buy it myself, which I did, &c.

"On the 5th November, 1845, I contracted the eighty acres of land to one David Crucob for two dollars per acre, (which would about pay the bond, interest and cost,) payable in four equal annual instalments."      *      *      *      *      "I am willing to pay the one-half to you, and will send it in any way which you may direct; but as to the other half I cannot pay it to you without having the decision of the court upon the matter," &c.

Various points were submitted on the part of the plaintiff.

On the trial, PEARSON, J., charged the Jury, *inter alia,* that long before the assignment, (meaning of the bond to Fisher,) it had become a judgment; the bond was merged, of which Mr. Fisher had full notice both by the indorsement on the bond and by his own letter. It was no longer an obligation, and the assignment might as well have been written on any other piece of paper.— Worded as it is, it vests in Mr. Fisher an equitable right to one-half of the judgment, and no more. That was all Small owned, and all he could assign.

The defendant was instructed in 1843 not to buy in the property for the plaintiff, but to have it returned unsold for want of bidders, and it does not appear that he ever afterwards received orders to the contrary. In December, 1844, he had it again exposed to sale, and bid it in himself for $100. The plaintiff contends that for this disobedience he is responsible to him for the whole debt, and we are of opinion that he is responsible for all that is lawfully coming to the plaintiff, to wit: one-half of the original judgment and interest, or all that part not previously assigned to Smith.

You must judge whether the business has been promptly attended to by the defendant, and all the money which he was bound to pay, offered in a reasonable time. If it was, he is entitled to a fair compensation for his trouble; if not, he can recover nothing.

Plaintiff excepted to the charge.

Verdict for plaintiff for $88 72½ damages, with six cents costs.

Errors were assigned to the portion of the charge first above referred to, and also to other portions of the same.

The case was argued by *Fleming* and *R. J. Fisher* for plaintiff in error.—On the part of plaintiff was cited Mott *vs.* Clarke, 9 *Barr* 399; Ege *vs.* Barnitz, 8 *Barr* 312; 9 *do.* 35; 17 *S.* & *R.* 400; 2 *John. Ch.* 443; 1 *Dow* 50, and other cases.

*McCormick* for defendant in error.—He contended that Smith was in no default in respect to his assignment; that the law does not authorize or require an assignment of a judgment to be recorded. That the assignment of a mortgage need not be recorded to give it validity against a subsequent assignment by the mortgagee to a third person for a valuable consideration without notice, 4 *Rawle* 254, Craft *vs.* Webster; 9 *Barr* 400, Mott *vs.* Clark.

That the bond was merged in the judgment, and that it ceased to possess the qualities of a bond, and was no longer assignable, 6 *S.* & *R.* 296; 1 *P. Rep.* 250. That the assignment for a *previous liability* does not make the assignee a holder for value so as to free him from equities between the former persons in the interest, 6 *Wh.* 220.

The opinion of the court was delivered by

Gibson, C. J.—As the defendant is but a stakeholder as to a moiety of the judgment in contest, the question is whether the prior assignee of that moiety has forfeited his title to it; and it is very clear that he has. The maxim *prior in tempore potior in jure* holds, it is true, wherever it has not been inverted by enactment, as it has been by the recording laws so far as regards conveyances of land, or where the benefit of it has not been lost by misconduct or imprudence; but it must not be allowed to protect a party who has neglected a requisite precaution to protect from imposition those who may come after him. That a man is bound to enjoy his property so as to do no injury to another which can be prevented, is also a maxim entirely consistent with the preceding one and equally potent. It contains the ruling principle of an extensive range of cases, and among others cases of injury from negligence. Thus in Parnaby *vs.* The Lancaster Canal Company, 11 *Ad.* & *E.* 223, Lord Denman held the defendant liable for damage suffered from a boat which had been sunk in the channel of the canal and was not removed, comparing the case to that of a shop keeper who leaves a trap-door open by which a customer receives a hurt, and the judgment was affirmed in the Exchequer Chamber. On the same principle it was ruled in Vaughan *vs.* Manlove, 3 *Bing. N. C.* 468, that an action lies against a proprietor for having placed a rick so near the extremity of his land that the flames, from a spontaneous combustion of the hay, set fire to his neighbor's house. The English books are full of decisions for the principle, and they contain only one which infringes on it. In Harris *vs.* Baker, 4 *M.* & *S.* 27, trustees of a road were not

[Fisher *v.* Knox.]

held liable to an action for a personal injury received from a fall in the night, over a heap of scrapings on the road side, placed there without a light to give notice of it, because, as Lord DENMAN explained the case in Parnaby *vs.* The Lancaster Canal Company, the defendants were public officers who derived no benefit from the road. But were they for that reason less answerable for neglect of official duty? According to Coggs *vs.* Bernard, a volunteer without hire is held to reasonable diligence. The truth seems to be, Lord DENMAN saw that Harris *vs.* Baker was not sustainable, and it would have been more candid in him to overrule it. Whatever may be thought of that case in England, it is very certain that Mott *vs.* Clark, coming up as it does to the very point, settles it here. A grantee who had not registered his conveyance was postponed to a party who had taken without notice an assignment from a subsequent mortgagee who had notice, though the grantee was not bound by the recording acts to register his deed for the information of those who might be disposed to purchase a subsequent mortgage. He was held bound to do so by the maxim last quoted. The rule therefore is, that unless there has been supineness on the other side, negligence in the enjoyment of property or the exercise of a right is cause of redress in equity and at law. Was there not on the part of the prior assignee in these instances culpable indifference to the interest of others? Though no law requires such an assignment to be docketed, the practice to mark the judgment to the use of the assignee is universal, and it ought to have been pursued here; for no prudent purchaser of a judgment invests his money in it before the record has been inspected. From what else could he derive information? He has nothing for it but the honor of the assignor; and any one who leaves it in the power of another to deceive may be said to collude with him before hand. Certainly a chancellor would not execute an equitable assignment in his favor.

As the defendant's character of stakeholder of a part is put out of the way, he is liable for the whole on the principle laid down by the judge to charge him with a moiety.

Judgment reversed, and *venire de novo* awarded.