## CITIZENS NATIONAL BANK v. CULVER & TRUSTEES.

The lien of an attorney upon a judgment recovered by him will be enforced according to the law of the state where the lien attached, and not according to the law of the state where the judgment is sought to be collected.

By the law of Vermont, as established by their judicial decisions, an attorney has a lien upon a judgment recovered by him, not only for his term fees, attorney fees, and travelling fees, and for all money expended by him in prosecuting the suit, but also, it seems, for his reasonable charges for arguments, thus covering and securing to him to the full extent all just claims as attorney in the suit.

And this lien is there protected so that it cannot be defeated by an attachment of the debt upon which the lien exists by trustee process, even though no notice of the lien had been given by the attorney to his debtor.

ASSUMPSIT, by the Citizens National Bank against Elisha G. Culver, principal, and Pike & Blodgett, trustees. The writ was dated March 6, 1873, and was served on the trustees, but no service has been made upon the principal defendant, who resides in Vermont. It was admitted that one Gerrish was the plaintiff in interest. The trustees disclosed $125 cash in their hands, and one Norman Paul appeared as claimant of the funds in the hands of the trustees, and the case was tried by the court.

The court found that one Sanborn, of New Hampshire, brought a suit at law upon a note, and a bill in chancery to foreclose a mortgage, against said Culver, in the courts of Vermont, in 1870, both of which suits terminated in favor of said Culver, and in 1872 a final decree was made for Culver, that he recover his costs. The costs were taxed, and judgment rendered in his favor for the same. Execution issued

on said judgment in the name of Culver against said Sanborn, and this execution was sent by said Paul, Culver's counsel, to Pike & Blodgett, the trustees, who collected the same of said Sanborn, and thereupon this writ was served upon them as trustees. The amount disclosed by the trustees is the sum thus collected.

Said Paul claimed these funds on the ground that he had a lien upon the execution for his fees and disbursements in said suits against Culver, in Vermont.

The court found that said Paul, an attorney and counsellor-at-law in Vermont, was said Culver's counsel in the two suits in Vermont, and that his charges for services and disbursements in both said suits were $220.25; that he had credited Culver with $33.95, cash paid him by Culver, leaving a balance in his favor of $186.30. The charges are for the usual travel and attendance at court, and for services in taking depositions and testimony in the chancery case, arguments, &c., and the court found that said charges were reasonable and proper charges for the services rendered.

After said judgment was rendered, said Culver told said Paul to take the judgment and apply it on said Paul's account against him as far as it would go; that said Paul had the judgment entered up, took the execution, and sent it to Pike & Blodgett, with orders to collect the same,— but he did not notify them that he held a lien or any claim of any kind upon it, and he had not in fact ever given Culver credit for the amount of it upon his account, said Paul understanding that the judgment and execution were his to do as he pleased with, but not to be credited or allowed on account till collected. It appeared that said Culver owned a farm in Vermont subject to a heavy incumbrance, but whether he was worth anything above said incumbrance did not appear. Said Paul claimed to hold his lien according to the laws of Vermont, as found in the judicial decisions. No directions were given said Paul as to how he should make the application of the amount of this judgment, and said Paul has no other funds of said Culver's in his hands to be applied on said account.

The court ruled *pro forma* that the claimant was entitled to hold the funds in the hands of the trustees, and the plaintiff excepted.

The questions of law were reserved.

*Barnard,* for the plaintiff.

The claim of the attorney Paul does not rest in contract, as that branch was abandoned at the hearing, but on the law of attorney's lien: hence the law as to the construction of contracts made in foreign countries does not apply.

Attorney's liens in each jurisdiction depend upon the laws of the state where they are sought to be enforced, unless the laws of a country have a binding force beyond its territorial limits; which is not the fact. See *Smith* v. *Godfrey,* 28 N. H. 379. It is so far like a lien by attachment, that it must depend upon local law for its support; and

were it not that our laws recognize such liens, the claimant would have no standing in court, as Vermont law is limited in its application to the state limits. As, however, our laws recognize such liens, he is entitled to claim it under and according to the provision of our law, and by that it extends only to the fees and disbursements on account of the taxable costs—*Currier* v. *B. & M. Railroad*, 37 N. H. 223—and does not extend to commissions, counsel fees, or incidental expenses not taxable. *Wright* v. *Cobleigh*, 21 N. H. 339, *Wells* v. *Hatch*, 43 N. H. 246, and *Currier* v. *B. & M. Railroad*, before cited. It does not yet appear, from the claimant, what, if anything, in his bill could be claimed under our practice, except his statement that twenty-five dollars would cover all disbursements. Suppose, further, that by the laws of Vermont an attorney had a lien upon all the real estate of his client for his fees and disbursements : would it be claimed that he could enforce such a claim upon real estate in this state ? Yet the claimant seeks to take these funds from an honest creditor of the defendant by a similar process.

*Blodgett*, for the claimant.

I. The claimant's lien is to be determined by the laws of Vermont, and not by the laws of New Hampshire.

The judgment was rendered in Vermont. It was there the claimant's services were performed ; it was there the lien was created. The claimant's lien as an attorney is an implied contract. Contracts are to be governed and interpreted by the law of the place where they are made. " Where the lien or privilege is created by the *lex loci contractus*, it will generally * * be respected and enforced in all places * * where the right can be beneficially enforced by the *lex fori*." Story's Confl. of Laws, 6th ed., sec. 322, *b*. This rule is very nearly universal. 2 Pars. on Cont. 89. The case at bar is not an exception. If there was no attorney's lien in Vermont, the claimant would have no lien here ; but if there was no such lien here, still the lien there would be enforced here. Story, before cited, sec. 322, *b*. Courts have always favored the lien of an attorney, and will sustain it so far as consistent with positive law.

II. What is the extent of the claimant's lien under the Vermont decisions ? It extends to the term, attorney, and travel fees, and for all money expended by him in prosecuting the suit. *Heartt* v. *Chipman*, 2 Aik. 162 ; *Walker* v. *Sargent*, 14 Vt. 247. It extends also to all papers in his possession for any balance due upon other matters, as well as in the particular suit. *Hutchinson* v. *Howard*, 15 Vt. 544 ; *Hooper* v. *Welch*, 43 Vt. 171.

It will be noticed, in the statement of the case in *Hutchinson* v. *Howard*, *ante*, that the attorney claimed a lien for all his costs, which was allowed. From this it appears that the lien of attorneys has been enlarged and extended there since the earlier decisions, and it is now believed to embrace all proper charges which a lawyer can make against

his client. This is just and equitable, because there is no sound reason for the distinction once held to exist between attorney and counsel fees. The tendency is to abolish all such distinctions, and in most of the states the lien applies equally to barristers, counsellors, and attorneys. *Vide* 1 Pars. on Cont. *99.

Other liens have of late been created or greatly enlarged, both in our own and other states, by legislative enactments. Why should not the lien of attorneys be correspondingly enlarged by the court, when reason, justice, and the protection of the bar, in a united voice, require it?

III. Trustee process is an equitable proceeding, and is to be governed by equitable considerations. There is no equity in depriving the claimant of his lien upon a judgment made up and constituted from his advances and services. The present suit has no foundation in equity, is in the name of a nominal plaintiff, and is based upon a fraudulent patent right note which it is evident the courts of Vermont would not enforce. I deny that the bank, or the real plaintiff Gerrish, is a *bona fide* creditor of Culver, but concede the contrary; and the question then is, To whom ought the funds in the trustees' hands to be paid? I say, to the claimant, because he has a special right by virtue of his lien, while the plaintiff's right at most is general. The claimant stands first in right and first in law. It may be urged that the claimant gave no notice of his lien. This cannot avail the plaintiff, because notice " is unnecessary, except in case of negotiation of a debt, or to protect a *bona fide* payment of the debt, in ignorance of the lien claimed." REDFIELD, J., 15 Vt. 547, before cited.

IV. Even if the claimant had no lien as an attorney, he would still be entitled to the funds in the hands of the trustee by virtue of the assignment made to him by Culver, before the judgment was entered up and execution issued.

This assignment was valid under the laws of Vermont. *Hutchins* v. *Watts*, 35 Vt. 360; *Noyes* v. *Brown*, 33 Vt. 431. If good there, it is good here. Story's Confl. of Laws, secs. 398, 399; 2 Story's Eq. Jur., sec. 1047. I admit that notice of the assignment must generally be given; but this would seem to be necessary only against the debtor. Story, before cited, sec. 1047. Suppose Paul had immediately given Sanborn notice of the assignment from Culver to him, what possible effect could that have upon the present plaintiff?

V. In any view, the credit of $33.95 on the claimant's bill cannot be considered as payment of disbursements. The case finds that it was a general payment, and therefore without direction where it should be applied. The parties having made no specific application, the law will apply it in satisfaction of the oldest charges to an equal amount on the claimant's bill, which, aside from one item of twenty cents, are not for disbursements, as appears by the bill.

VI. Should the court hold that the claimant's lien is to be determined by the decisions in this state, and it should be deemed material to ascertain what of the claimant's charges went to make up the judg-

ment,—*Culver* v. *Sanborn*,—a certified copy of the items in the taxation of costs allowed in Vermont in that suit will be furnished to the court if desired.

SARGENT, C. J.   The plaintiff claims that a lawyer's lien must depend upon the laws of the state where it is sought to be enforced, and that it cannot depend upon the law of any other state, unless the law of that other state has binding force beyond the territorial limits of such state.   But that is not the true ground upon which the law of contracts even is held to be, that the law of the place where the contract is made must as a general rule govern its construction.   The law of the place where the contract is made has no more force outside the limits of that state or country, than the law regulating attorneys' liens has.

But it is not upon the principle that any of these laws have any force outside the state or country that made them; and their authority is admitted in other states, not *ex proprio vigore*, but *ex comitate*—*Smith* v. *Godfrey*, 28 N. H. 379 ; and it may be difficult to see why this principle of *ex comitate* should not apply to the law regulating attorneys' liens, as well as to the other laws governing the construction and interpretation of contracts.

It is admitted that if this matter of lien were simply a matter of contract, then it must be governed by the law of the place where the contract was made.   It is admitted that the claimant may have his lien according to the law of New Hampshire, while the claimant asks to have the lien allowed according to the law of Vermont where he claims the lien attached, and also asserting that there is a substantial difference between the laws of Vermont and New Hampshire on this subject.   No question is raised as to the law that should be applied in giving construction to contracts.   Does this lien stand upon any different footing substantially ?

Story, in his Confl. of Laws, p. 267, after illustrating the principle of the *lex loci contractus* as applied to contracts, says,—" But there are some other effects which may be deemed accompaniments, effects, or incidents of contracts, which may here deserve a passing notice.   They are properly collateral to them, and arise by operation of law, or by the act of the parties."   He mentions many of these incidents,—the right of discussion and of division among sureties, the lien of the vendor upon real estate sold for the payment of the purchase-money ; also, the lien given for the purchase-money upon goods or merchandise sold by the civil law, the lien of a bottomry bond upon the thing pledged, the lien of mariners on the ship for their wages, the priority of payment *in rem* which the law sometimes attaches to peculiar debts or to particular persons.

In these and the like cases, where the lien or privilege is created by the *lex loci contractus*, it will generally, although not universally, be respected and enforced in all places where the property is found, or where the right can be beneficially enforced by the *lex fori*.   And, on

the other hand, where the lien or privilege does not exist in the place of the contract, it will not be allowed in another country, although the local law where the suit is brought would otherwise sustain it.   He then speaks of the difference between personal or movable, and real or immovable, property, and of the *lex rei sitae* as applied to the latter,— to real estate,—but as not applicable ordinarily to personal property. He speaks of the law of the domicile of the debtor as being important to be observed in all questions relating to personal property.

In the case before us, the debtor, who owes this plaintiff, resides in Vermont, and also this claimant, and if the law of the domicile of the debtor is to apply in such cases, when the subject-matter is personal property, it would be an additional reason why the attorneys' lien should operate the same here as in Vermont.   See, also, pp. 335 and 336.   Upon these and similar general principles, we think the law should be held that this claimant, whose services have mainly earned and whose payments have contributed towards the money which is now in the hands of these trustees, should hold according to the law of Vermont, the *lex loci contractus* and the place of domicile of the debtor.

What is the law of Vermont in relation to attorneys' liens ?   It is said, in *Walker* v. *Sargeant*, 14 Vt. 247, 253, that "the existence of an attorney's lien for his costs and disbursements upon a judgment recovered in favor of his client, as also upon the proceeds of such judgment and on papers in his hands belonging to the client, has been always recognized in this state since the decision cited from the 2 Aikens." (See 2 Aik. 166.)   The question in that case was, whether the attorney's lien was good, and would be protected against the preëxisting rights of third persons ; and it was held that it would not be.

In the case referred to,—*Heartt* v. *Chipman*, 2 Aik. 162,—it is held that the attorney has a lien upon the debt which he has prosecuted to judgment for his term fees, attorney fees, and travelling fees, and for all money expended by him in prosecuting the suit ; but the extra charges of counsel for argument, etc., are not by the practice of the state thus secured.   It was also held in this case, that, as between the creditor and attorney, the money to the amount of the claim of the attorney is his, and cannot be assigned by the former.   See, also, *Lake* v. *Ingham*, 3 Vt. 158, and *Foot* v. *Tewksbury*, 2 Vt. 97, in both of which the right to the lien is admitted ; and, also, in *Beech* v. *Canaan*, 14 Vt. 485.

In *Hutchinson* v. *Howard*, 15 Vt. 544, it is held that an attorney has a lien upon an award of arbitrators, when a pending suit is referred, to the full extent of all his just claims as attorney in the suit, and that this lien cannot be defeated by attachment by trustee process, even though no notice of the lien had been given by the attorney to his debtor.   This seems to enlarge the lien so as to include charges for argument as well as other fees, going " to the full extent of all just claims as attorney in the suit," and protecting this lien against being defeated by attachment upon the trustee process, even without any

notice of the lien by the attorney to the debtor, notice being held necessary only in case of negotiation of a debt, or to protect a *bona fide* payment of the debt in ignorance of the lien. To the same effect is *Hooper* v. *Welch*, 43 Vt. 172.

It therefore becomes unnecessary to consider the question raised about the assignment in this case. The trustee process is an equitable proceeding, and we think it consistent with the strictest principles of equity to allow this lien of the attorney in Vermont, upon the judgment which he by his services and payments of money had recovered, even though he was obliged to send it to this state for collection, to be protected against this attachment upon trustee process upon a claim concerning which we know nothing, and which, if ever litigated and settled at all, must probably be litigated and settled according to the laws of Vermont.

We think the claimant is entitled to hold these funds in the hands of the trustees, and that therefore the

*Trustees must be discharged.*