ROSE v. FRETZ.

(Circuit Court, E. D. Pennsylvania. June 18, 1901.)

SETTLEMENT OF SUIT—VALIDITY—INTEREST OF ATTORNEY IN RECOVERY.

The knowledge of a defendant, in a suit for infringement of a patent, that complainant's attorney is to receive one-half the proceeds of the suit; does not charge him with notice that the agreement therefor is in writing, and so executed as to operate as an equitable assignment of an interest in the patent, nor put him on inquiry as to its terms; and a settlement made by him with complainant, without actual notice of such facts, and by which he receives a release executed by the record owners of the patent, is valid and binding.

In Equity. Suit for infringement of patent. On motion by defendant to dismiss.

Henry E. Everding and Alex. Simpson, Jr., for plaintiff.
Mark W. Collett and James H. Wolfe, for defendant.

ARCHBALD, District Judge.[1] By a writing under seal between the plaintiff, John Rose, and J. Walter Douglass, made December 31, 1896, it was, in substance, agreed that, in consideration of Douglass "taking charge of the handling" of prospective suits against infringers of the plaintiff's patents, he should have, as compensation for such service, one-half of all that was recovered as damages, either by amicable settlement or by litigation, the expenses incident thereto being first deducted, the plaintiff himself undertaking to agree to any reasonable settlement which Douglass advised. Assuming, without deciding it, that this gave Douglass an interest in the present litigation, which could not be disregarded in a settlement of it after notice, the question is whether, under the evidence, the defendant had such notice. The burden of proving this is upon

---

[1] Judge of Middle district, specially assigned to Eastern district.

him who asserts it, and, if it is left in doubt, it cannot be said to have been established by the weight of the evidence. Douglass did not appear as a party to the case, nor was it marked to his use, while, according to the records of the patent office which were in the hands of the defendant and his counsel at the time they effected the settlement in question, the real owners of the patent, and the parties thereby apparently entitled to damages for the infringement, were Charles F. Walter and the John Rose Company, from whom, as well as from the plaintiff, Rose, the defendant took pains to obtain releases. On the face of things, therefore, the settlement was effected with the right parties, and, while it is true that the state of the record would not protect Mr. Fretz if he had actual notice, in a case of doubt it has its weight. Fisher v. Knox, 13 Pa. 622, 53 Am. Dec. 503; Guthrie v. Bashline, 25 Pa. 80.

Mr. Fretz denies that he had any knowledge that Douglass had an interest, but I am forced to conclude that to a certain extent he had. He virtually admits that in the first settlement, made with Rose in 1897, for $800, the amount to be paid was to be put into two checks, of $400 each, only one of which was to be shown to his attorneys, Mr. Douglass and Mr. Everding, so that it might appear that that was what he settled for:

"Q. Mr. Fretz, Mr. Everding testified that at the interview he had with you, some time in 1897, when the subject of your settlement with Mr. Rose for $800 was discussed, you informed him that Rose had asked you to give him two checks, in order that he might keep one for himself, and show the other to Mr. Douglass, in order to sell out Mr. Douglass as to one-half of this settlement. Do you recollect that conversation? A. I do remember the conversation. Q. Did you make that statement to Mr. Everding as he has related it? A. I remember saying that the money was to be paid inside of thirty days on demand in any shape that he might want it,—either two checks, or one check and part cash. Q. Did you say to Mr. Everding that Mr. Rose wanted the payment divided for the purpose as stated by Mr. Everding or anything to that effect? A. I simply stated the facts, and left him to draw his own conclusions."

That Mr. Fretz himself understood the conclusion to be drawn is plain from the terms of his answer.

Further than this, the opposition by Douglass and Everding to the settlement with Rose was made the basis of direct complaint by Mr. Fretz in his testimony before the master, January 10, 1900, where he declared that "the fact that his attorneys were to receive 50 per cent. of all moneys for past royalties, and his tendering to them of only 50 per cent. of the $400 he would obtain from us, and nothing on the second $400, is why this case is here to-day." The evidence of knowledge on the part of Mr. Fretz which this discloses is not disposed of by the suggestion that Mr. Everding at once declared the statement untrue. It is manifest that this denial was directed merely to the insinuation of Mr. Fretz as to why the settlement had been upset and the case proceeded with, and not to the interest of the attorneys referred to, and could hardly have been understood by him any differently. But, however that may be, I am not prepared to let it overcome the strong persuasive evidence which we have from the incident, as well as the other facts in the case,

that Mr. Fretz knew that one-half of what was recovered was to go to the plaintiff's attorneys.

Notwithstanding this conclusion, however, I think the settlement must stand. As I have already pointed out, it was made with the plaintiff and those who held the duly-recorded assignment of the patent. It could not well have been made with any one else. The knowledge of Mr. Fretz of any interest outside of this is not shown to extend to the existence or the terms of the written agreement between Rose and Douglass, or to its effect as an equitable assignment, if that be what can be really claimed for it. I do not lose sight of the statement by Mr. Everding that he informed both Mr. Fretz and Mr. Collett with regard to it; but this they severally deny, and I cannot be expected to say that I believe the one any more than the other. Furthermore, in Mr. Everding's cross-examination we have that which seems to materially qualify what he had previously asserted:

"Q. Why did you say, Mr. Everding, that Mr. Fretz knew of the existence of this agreement at that time? Upon what do you base that statement? A. That is based upon several circumstances. One was a talk I had with Mr. Fretz at that time, and the other was a talk which I had with Mr. Rose prior to that time. * * * Q. Did you, Mr. Everding, at this interview, in 1897, say to Mr. Fretz that no settlement could be made between him and Mr. Rose without the intervention of Mr. Douglass? A. No; I do not think I said that to Mr. Fretz, but I believe that was the reason that Mr. Fretz was angry with Mr. Rose; that is to say, that Mr. Rose had not kept his word and settled the case, but had said that his attorney refused to let him settle it. I might say here that, in almost every interview I had with Mr. Fretz, Mr. Fretz repeatedly said that 'unless Mr. Rose had broken his word the whole matter could have been settled between us,'—that is, between Mr. Fretz and Mr. Rose."

Now, all that I am prepared to hold from this evidence is that, at the time of the settlement in controversy, Mr. Fretz knew that one-half of what was recovered in suit was to go to the attorneys who were conducting it, and this did not, in my judgment, prohibit the settlement which was made. Mr. Douglass, while not a member of this bar, is an attorney at law, as I understand it, or, at least, a solicitor of patents, and, with Mr. Everding, was recognized as conducting the case for Mr. Rose, the plaintiff, in that capacity. That he was to get a quantum of the amount recovered certainly did not prevent his client from effecting a settlement without him, nor did the knowledge that his attorney was to be so compensated debar his opponent from agreeing thereto, nor put him on inquiry with regard to the details of the arrangement between them. Being between attorney and client, he had the right to assume that the latter could unquestionably settle the matter. If this be not so, then, in case of an agreement with an attorney for a contingent fee, no settlement could be made with the client without the consent of his attorney,—a position which is not tenable. Weakly v. Hall, 13 Ohio, 167, 42 Am. Dec. 194; Lewis v. Lewis' Adm'x, 15 Ohio, 715; Boardman v. Thompson, 25 Iowa, 487; Foot v. Tewksbury, 2 Vt. 97; Railroad Co. v. Ackley, 171 Ill. 100, 49 N. E. 222; Murray's Estate, 13 Pa. Co. Ct. R. 71. As said by McPherson, J., in Risten-

batt v. Behney, 3 Lanc. Law Rev. 1, a case very similar to the present in most of its parts:

"The employment of an attorney does not take away the litigant's right to settle his claim or to satisfy of record a suit brought thereon, even if the attorney knows nothing of his purpose, or is opposed to its being carried out. As between client and counsel, the former loses no right of control over the suit merely because he has agreed to pay the latter either a reasonable sum for his services or a sum contingent upon success."

The position which I take, therefore, and on which I rule the case, is that admitting that Mr. Fretz knew there was an agreement by which the plaintiff's attorney, Douglass, was to have one-half of the proceeds of the suit,—which I find to be the fact,—I am not convinced that he knew this arrangement was in writing, or that it amounted to an equitable assignment of so much of the claim; and, being between attorney and client, even though he knew of its existence he was not put upon inquiry as to what were its terms, and could settle with his opponent without regard to it. The motion to dismiss must therefore prevail, and is now allowed. Let a decree dismissing the case be drawn by counsel.