## Commonwealth v. Poley

*Richardson Dilworth*, district attorney and *Samuel Dash*, assistant district attorney, for Commonwealth.

*Jacob Kossman*, for defendant.

KUN, P. J., October 20, 1952.—Defendant has filed a petition to quash the above numbered indictments which have been filed against him, charging him with setting up an illegal lottery, etc. Petitioner has raised many interesting questions as to the propriety of the proceeding against him, but we will limit ourselves to the consideration of reason number 8, in which he avers that the hearing on the warrant for his arrest, issued on the complaint of a county detective attached to the district attorney's office, was illegally held before a magistrate, in his private office, who had no jurisdiction to hear the charge. If that is so, the proceeding as to defendant was coram non judice, null and void and of no effect, and the petition to quash the indictments will have to be granted.

Petitioner bases his contention on the proposition that the hearing before the magistrate in this case was in violation of the Magistrates' Court Act of June 15, 1937, P. L. 1743. For many years prior to the passage of the act, scandalous practices had developed in the handling of gambling and lottery cases before some magistrates who conducted hearings in their private offices in these cases, with the obvious connivance of some police officials, and discharged many persons charged with these offenses whose cases should have been sent to the grand jury. In other cases gamblers and numbers writers were ostensibly held for court, but after a few days were discharged. The public press and groups in the community interested in law enforcement kept hammering away at the need for correcting the situation, as did also a special grand jury, all of which eventually resulted in the passage of the act.

The Magistrates' Court Act of June 15, 1937, P. L. 1743, 42 PS §1111, provides as follows:

"The chief magistrate, after consultation with the district attorney and the director of public safety of the city of Philadelphia, shall select not less than ten

nor more than fifteen station houses, which shall be known as divisional police courts, and in which, in addition to the hearings regularly held therein, shall be held *exclusively* (except as provided in Section 10 hereof) the hearings of all persons arrested on sight or on a police warrant for the following indictable offenses, that is to say: For treason . . . keeping, setting up and maintaining lotteries . . . poolselling and bookmaking . . . and also all conspiracies . . . to commit any of the foregoing offenses." (Italics supplied.)

Section 1112, entitled "Place for hearing certain criminal cases", provides as follows:

"In cases of offenses herein required to be heard exclusively in the divisional police courts, the jurisdiction of each of said courts shall extend over arrests made in the police district in which each court is located. . . . Hearings on warrants issued by any magistrate, *other than police warrants*, may be held in the court of such magistrate, the police station house to which he is assigned, or the divisional police court in which he may be sitting at the time, as said magistrate shall direct." (Italics supplied.)

The report of the commission appointed to study and recommend improvements in the laws relating to the magistrates' courts in Philadelphia, found in Volume 21, part 7, 1937, of the Pennsylvania Legislature Journal, at page 7611, which preceded the passage of the act, is most illuminating. The report refers to the special grand jury statement that the practices in vogue gave opportunnity for the so-called "fixing" of this class of cases between hearings before the magistrates, by means of extortion by police officers and others. The over-all purpose of the act was to require prosecutions instituted by police officials, in the broad sense of those charged with the prosecution of such crimes, to be held in the limelight of publicity, in the

publicly established divisional police courts to be established by the district attorney and the director of public safety (who would now be the commissioner of police), as provided by the act. The constitutionality of the sections of the act relating to criminal jurisdiction of magistrates was sustained in Rutenberg et al. v. Philadelphia et al., 329 Pa. 26, wherein the opinion of the court contains a much fuller statement of the historical background of the act than we have given. We quote only an excerpt from page 31, giving the reasons for the appointment of the commission which recommended the passage of the act:

"Conditions which had defied all efforts of the past for correction not only continued to exist, but other vicious practices had developed in the system, such as the taking of worthless bail bonds, making possible the 'fixing of cases' by continued hearings, releasing persons on copy of the charge, and in general the ineffectiveness and corruption of some of the magistrates in dealing with cases where rackets and organized crime were involved."

The assumption was that the likelihood of "fixing" gambling and lottery cases heard in such special magistrate courts as the divisional police courts, where provision is made for the regular appearance of a representative of the district attorney's office and an official stenographer to take down the proceedings, would be reduced to a minimum, and thus put an end to the ugly practices which had prevailed theretofore in that field of criminal prosecutions. The provisions in the Magistrates' Court Act that the cases of persons charged on police warrants with gambling and lottery, poolselling and bookmaking "shall be heard exclusively" in any one of the divisional police courts as therein provided, is a mandatory provision and cannot be ignored by the police or the district attorney. The argument that county detectives attached to the dis-

trict attorney's office do not come within the scope of the act, comes with bad grace because the act names him as one of the officers charged with the duty of setting up the divisional police courts, which are given exclusive jurisdiction to hear such cases. The great distinction made in the Magistrates' Court Act is between warrants issued at the instance of private persons and official prosecutions, and while the act, in giving "exclusive" jurisdiction to divisional police courts in the type of cases mentioned, refers to cases of persons arrested on a "police warrant", we would rule even in the absence of the statute hereinafter mentioned that the term "police", as used in the act, is to be taken in its broad and generic sense, and would include county detectives attached to the district attorney's office. It must be apparent that cases in which persons are charged with gambling, lottery, poolselling, bookmaking and the like, on warrants issued at the instance of county detectives, are just as pregnant with the potentialities of "fixing" as cases instituted at the instance of the police force. This is no reflection on the present personnel of the county detectives, but it is an explanation of the purpose and intent of the Magistrates' Court Act to prevent so far as possible the "fixing" of this class of cases by having them heard out in the open, in designated public divisional police courts. However, the Act of June 3, 1919, P. L. 369, sec. 1, as amended April 29, 1925, P. L. 352, sec. 1, 16 PS §1741, which provides for the appointment of county detectives to be attached to the district attorney's office is a complete answer to his contention on this branch of the case, for the statute categorically designates such county detectives to be, inter alia, "general police officers".

The other position taken by the district attorney in opposition to the petition to quash the indictments in this case is that while defendant could have raised the

question of jurisdiction before the indictment, he may not do so after the indictment. This is based on a misconception of the law. The cases cited by the district attorney on this point were all cases in which the magistrates' courts involved did have jurisdiction over the case, but irregularities of various kinds were alleged in the course of the proceedings before indictment, and all that the cases decided is that in that situation it is too late to question the irregularities before the magistrate after indictment. It must be emphasized, however, that in every one of those cases the magistrate's court involved had jurisdiction of the subject matter. The difference is pointed out in Commonwealth v. Greenberg, 136 Pa. Superior Ct. 32, one of the cases cited by the district attorney, where defendant sought to be discharged because of some procedural defect in the preliminary hearings before the magistrate. As stated by the court at page 36:

"The court below in its opinion has, we believe, well stated the purpose sought to be accomplished by this legislation: 'As we view the act, it is merely a procedural act and not *jurisdictional* in its effect'." (Italics supplied.)

The closest analogous case which we have been able to find is Commonwealth v. Kurz et al., 14 Dist. R. 741, wherein it was held by Barratt, J., of Common Pleas Court No. 2, in a rather full opinion, that a magistrate who presumed to hold a hearing outside of his regular established magistrate's court, and outside his district, in his private office in another part of the city, acted without legal authority, and indictments found pursuant to the magistrate's return in that situation were quashed. The court arrived at that conclusion on the basis of sound reasoning, as fully set forth in the opinion. The distinction between mere procedural defects and absolute lack of jurisdiction of the subject matter was pointed out by the court at page 750, as follows:

"In quite a number of cases it has been decided that a person accused *may waive irregularities in the process;* and some of these cases are mentioned herein. It will be observed of them, however, that in all which have come to the attention of the court there was *judisdiction of the subject-matter, both in respect of the matter itself and of the hearing or preliminary examination."* (Italics supplied in part.)

In the latter, jurisdiction cannot be waived or conferred, otherwise the whole purpose of the law, as in this case the Magistrates' Court Act, would be frustrated. No doubt persons charged with gambling, lottery, pool selling and the like would be glad to confer upon magistrates other than the divisional police courts the jurisdiction to hear their cases, but this is precisely what the act prohibits. There is no such thing as conferring jurisdiction by consent upon a court which has no jurisdiction under the law.

One of the cornerstones of the opinion was the observation made by the noted Chief Justice Gibson of the Supreme Court, in the old case of King v. King, 1 P & W 15, 19:

"A court is defined to be a *place* where justice is judicially administered; and a justice of the peace, being a judicial officer, must necessarily have his court or place of administering justice. That the matter has been so regarded by the legislature, is clear from the act of assembly by which he is forbidden to keep his 'stated office' in a tavern. It is difficult to conceive of the office of a judge, without at the same time associating with it the idea of a place for the performance of its duties."

Consequently, the justice of the peace in that case, who was called to the home of one of the parties to act as one of the arbitrators and the matter was there adjusted in part by a judgment to be entered, had no lawful right to then proceed to his home and enter the judgment on the docket, because of the statutory re-

quirement that parties must voluntarily appear before the justice when judgment is to be confessed for a sum exceeding $100. The Supreme Court held this requirement to appear before the justice meant at the magisterial office or court, and not at some other place.

Another interesting case cited was Mills v. Commonwealth, 13 Pa. 626, in which defendant was tried in the Dauphin County Quarter Sessions Court for seduction. He was convicted and sentenced. It was found, however, that the trial was had at an adjourned court, contrary to an act of assembly governing the case. The act provided that at such special sessions no business within the jurisdiction of the court requiring the intervention of a grand jury or petit jury shall be transacted. Defendant took a writ of error, alleging want of jurisdiction in the court. The judgment of conviction was reversed on this jurisdictional ground, so that defendant was held for a retrial of the case. The Supreme Court pointed out in that case that while the quarter sessions court had general jurisdiction of the subject matter, the statute provided that at such special sessions at which defendant was tried, no business within the jurisdiction of the special court requiring the intervention of a grand jury or a petit jury shall be transacted.

The court then posed the question (pp. 629-30), "which shall be obeyed, the sovereign power of the state, or the will of the court of quarter sessions?", and ruled as follows:

"We are bound to regard the former. It is contended also, that it is not a case of want of jurisdiction, because the court of quarter sessions has jurisdiction of the offense. True, but it must be a court of quarter sessions, acting and speaking according to law . . . here the mode and the manner of administering the justice of the county was not provided or prescribed by

the law, and is directly prohibited by it. There was, therefore, no jurisdiction. . . ."

We have the same situation in the case before us. Defendant was taken before a magistrate in direct violation of a statute which conferred jurisdiction over him "exclusively" in certain divisional police courts, and this magistrate's court was not one of them. This defendant was held for court by a magistrate who was specifically prohibited by law from hearing his case. Nothing could be clearer than that the proceeding against him was illegal and of no effect, as was the action taken by the magistrate in holding him to await the action of the grand jury.

In the last case cited it appeared that some affidavits and certificates of consent on the part of defendant to be tried, were produced at the bar of the Supreme Court, but counsel for defendant denied them on their affidavit. We mention this only because of what was stated by the learned justice of the Supreme Court who wrote the opinion for the court, at p. 630:

"But we can regard neither the one nor the other; they are no part of the record, nor can they be made such. But for myself, I think it a matter of no account, and if the prisoner had appeared in court, and under his sign manual, on the record, agreed to be then tried, it would not have the slightest influence with me. I look to the law of the land. Something was said of the enormity of the offence. The prisoner, undoubtedly, if guilty (in relation to which it is not for me to express any opinion, as he will be tried again), not only violated the highest dictates of morality and good manners, but broke the law, and exhibited a most corrupt and indecent want of taste. But we look only to the record of the trial; it is our duty to see that it is right and lawful. Heeding neither the impulses of passion, nor tolerating the intrusion of prejudice; but in calm severity of judgment, we apply the rules of the

criminal law to it. And by that test, we find it wanting. The trial was *coram non judice*, and therefore null."

Here is something that prosecuting attorneys and courts might well ponder today because what was there so well stated is sound and rational. Indeed, the case was cited as late as Commonwealth v. Gill, 166 Pa. Superior Ct. 223, for the proposition that jurisdiction of the subject matter cannot be given to courts by consent, as by entry of bail, by waiver of any kind or by formal consent. It is not the consent of the litigant or his counsel which can constitute a tribunal by which a citizen may be tried and punished. It is the letter of the law, and that only, which can constitute such a tribunal.

It is more important that the law be administered in an orderly way and as prescribed by statute and judicial decision, than for expediency in a particular case, in violation of statute and decision; whatever the necessity for retrials and the expenses incident thereto. The strength of the law lies in its adherence to it, and nothing is better established in law than the proposition that the action of a judge or a court in a matter in which he or it has no jurisdiction over the subject matter, is coram non judice, null and void and of no effect. Being so, nothing can be predicated on such illegal action, when the illegality goes to the very jurisdiction of the court, as in the matter before us.

In the matter before us the magistrate who heard the charge against defendant in his private office, and not in one of the divisional police courts, had no jurisdiction whatever to hear the case, and nothing is better settled in law than that the question of jurisdiction may be raised at any time. We have before us an instance of a hearing by a magistrate in direct violation of a salutary statute passed to correct abuses, which conferred exclusive jurisdiction to hear cases of

the kind involved here in certain divisional police courts. The whole proceeding before the magistrate in this case, in his private office, was therefore coram non judice. It was null and void, as were the subsequent proceedings based thereon, namely, the finding of the indictments. No indictment can stand which is based on utterly illegal acts of prosecuting officers. It would be a reproach to the proper administration of justice if it were otherwise. It is the duty of police officials and district attorneys to ferret out crime and punish offenders, but they must take care that in so doing they do not violate the law themselves. We are well satisfied that it was not the intent or purpose of the district attorney to violate the law in this case. He must of necessity, as do all heads of departments, rely to a great extent on the services of subordinates, and it is to be regretted that in this instance they did not study the question thoroughly enough, resulting in these abortive proceedings. It was stated at the bar of the court that defendant here, for whom the warrant was issued, surrendered and was placed under arrest at the magistrate's office. It was the duty of the officials under the Magistrates' Court Act to take defendant to the proper divisional police court for a hearing.*

While the term, "coram non judice" literally means

---

*During the pendency of the proceedings it was brought to the attention of the court by chief magistrate of the board of magistrates that under date of April 8, 1952, a circular letter was issued by him to all the magistrates in the city, drawing attention to the fact that certain magistrates were holding hearings in gambling cases in their own courts, instead of referring them to the divisional police courts as required by the Magistrates' Court Act. The directive given to the magistrates reads as follows:

"Should you, at any time, issue a police warrant in any case listed under section 11 (which refers to a long list of crimes, including lotteries, gambling houses, bookmaking and the like) you will be sure to refer the case to the proper divisional police court for a hearing."

This directive was ignored in the instant case.

"in the presence of a person not a judge", when a suit is brought and determined in a court which has no jurisdiction in the matter, it is then said to be coram non judice and the judgment is void; so acts done by a court which has no jurisdiction over either the person or case, or the process, are said to be coram non judice: 18 C. J. S. 281. Such were the proceedings against defendant in this case before the magistrate who undertook to hear the case against defendant and held him for court. It was a clear case of coram non judice; the proceedings were null and void as were all the proceedings which followed thereon.

It follows that the petition must be granted and the indictments quashed. This does not mean that defendant is absolved from answering charges which can be properly made against him and heard in a court which under the law has jurisdiction to hear such cases. If the charges, as indicated, are in the realm of gambling or lottery, poolselling or bookmaking or the like, covered by the Magistrates' Court Act, they must be heard before a divisional police court, as provided.