## Phillips's Estate (No. 3).

*Equitable assignment—Assignments—Successive assignments—Notice—Priority.*

If an assignee of a chose in action fails to give notice to the person holding the fund assigned to him, a subsequent assignee without notice of the former assignment will upon giving notice of his assignment acquire priority. By such notice the legal holders are converted into trustees for the new assignee, and are charged with the responsibility towards him and the assignor is deprived of the power of carrying the same security repeatedly into the market, and of inducing third persons to advance money upon it under the erroneous belief that it continues to belong to him absolutely, and that the trustees are still trustees for him, and no one else.

Argued Jan. 22, 1903. Appeal, No. 97, Jan. T., 1902, by Andrena Moses, from decree of O. C. Phila. Co., Jan. T., 1885, No. 320, dismissing exceptions to adjudication in estate of Henry M. Phillips, deceased. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

The adjudication of PENROSE, J., showed assignments by H. Cleremont Moses of his interest in the decedent's estate as follows: (1) To Bank of Sumter, South Carolina, assignments, January 30 and May 30, 1894, as collateral to loan to Altamont P. Moses, for $10,000; (2) to Mrs. Andrena Moses, July 2, 1895, for $15,000; (3) to the United Security Life Insurance Company, February 28, 1899, for $60,000 (joined in by Altamont P. Moses); to Octavia Moses et al., January 5, 1900, for $1,000.

The material portion of the adjudication was as follows:

It was admitted that the assignments of H. Cleremont Moses

to the Bank of Sumter were duly executed, the consideration being as stated. The execution of the assignment to Mrs. Andrena Moses was also admitted, though the payment of the full consideration was not. But it was contended on behalf of the United Security Life Insurance Company that it was entitled to priority over both of the other assignments because of the alleged failure of the assignees in either case to give notice of the assignment. There was evidence of notice, both to the accountants, and to the United Security Life Insurance Company, in the case of the assignment to the Bank of Sumter; but as the assignment by H. Cleremont Moses was only collateral to a loan to Altamont P. Moses, payment of which will be awarded under the assignment by him, the question of notice is only important so far as concerns the assignment to Mrs. Andrena Moses. How far, as between successive assignees of a fund in the hands of a third person, notice of the assignment to such person is necessary to complete the title of the assignee as against a subsequent assignee, having no actual knowledge of the prior assignment, who gives such notice, does not appear to have been decided in Pennsylvania, though it has been held that an assignment is good, without notice, as against a subsequent attachment. But an attaching creditor stands precisely in the position of the assignor, with only such rights as he has against his assignee ; while the rights of a subsequent purchaser for value depend upon entirely different considerations. In England and in many of the states of the union it is perfectly well settled that the title of an assignee does not become complete until he has given notice, and the rule is that the assignees have priority according to the priority of notice: Story's Equity, sec. 421b. A different doctrine, it appears, however, is held in some of the states, where, between different assignees of a chose in action, he who is first in time is first in right, notwithstanding he has given no notice to the debtor or the subsequent assignee, though the debtor will be protected if he has made payment to the assignor or to the second assignee before notice of the prior assignment: Thayer v. Daniels, 113 Mass. 129; Williams v. Ingersoll, 89 New York, 598; Story's Equity, sec. 421c. See also Hollingsworth on Contracts, 300–302. In 2 Pomeroy on Equitable Jurisprudence, it is said: " The American decisions upon this subject cannot be recon-

ciled. I can only present those settled doctrines of equity which, it would seem, should apply to and govern such a condition of circumstances. In England and in some of the states the rule giving to the assignee who first notifies the debtor party or trustee a precedence over all others, even those who are earlier in date, furnishes a certain and simple criterion for determining the priority, it being remembered that this rule is confined to pure personal things in action, and does not extend to liens and other equitable interests in real estate. In the states where the rule referred to does not prevail, the question must turn upon other doctrines. If the interests are equitable in their nature, and the equity of the assignee is intrinsically superior to the others, the settled principles of equity should control, that the order of time determines the order of priority; or in other words, that the subsequent assignee takes subject to the rights of the one prior in time; and this principle has been applied, in such cases, by many able decisions. On the other hand, if the subsequent assignee has acquired the legal title, and was a purchaser for a valuable consideration and without notice, he is protected, and this doctrine of bona fide purchase seems to have been extended, by some decisions, to subsequent assignees who had only obtained an equitable interest."

The analogies with regard to sales of personal property in possession are certainly in favor of the view taken in the decisions last referred to, the vendee, in such case, being required, for the protection of subsequent purchasers, to take possession, to the exclusion of the vendor, where the property is capable of actual possession, or by assuming such open ownership as the case admits of, where it is not. Why should a different rule apply to purchases of choses in action? Why should the purchaser not be required to do all that lies in his power to make it impossible for the assignor to commit a fraud or to do an injury to subsequent purchasers, relying on his integrity and having no means of knowing that he has ceased to be the owner except by inquiry of the person in whose hands the fund is? The failure to give notice to such person puts it in the power of the assignor to do this wrong, and the consequences of the failure ought, therefore, to be upon him who commits it. As was said by Chief Justice GIBSON, in Fisher v. Knox, 13

Pa. 622, cited in a very able brief submitted by Mr. Jayne, " The maxim prior in tempore potior in jure holds, it is true, wherever it has not been inverted by enactment, as it has been by the recording laws so far as regards conveyances of land, or where the benefit of it has not been lost by misconduct or imprudence ; but it must not be allowed to protect a party who has neglected a requisite precaution to protect from imposition those who may come after him.   That a man is bound to enjoy his property so as not to do an injury to another which can be prevented, is also a maxim entirely consistent with the preceding one and equally potent.   It contains the ruling principle of an extensive range of cases of injury from negligence. . . . Was there not on the part of the prior assignee in these instances culpable indifference to the interest of others ?   Though no law requires such an assignment to be docketed, the practice to mark the judgment to the use of the assignee is universal, and it ought to have been pursued here ; for no prudent purchaser of a judgment invests his money in it before the record has been inspected.   From whom else could he derive information ?   He has nothing but the honor of the assignee ; and anyone who leaves it in the power of another to deceive may be said to collude with him beforehand.   Certainly a chancellor would not execute an equitable assignment in his favor."

This was said in a case where the first assignee of a portion of a judgment had failed to have the assignment noted on the docket, but it applies with equal force to an assignee of a fund, where, in the absence of a judgment or decree, notice of record is impossible, and notice to the holder of the fund is the only means of preventing injury to subsequent purchasers.   (The auditing judge added a reference to " what is said by Rogers, J., in Pellman v. Hart, 1 Pa. 263.")

The auditing judge is compelled to hold, therefore, notwithstanding the exceptionally able argument of Messrs. Moise and Matlack, and though his first impressions were to the contrary, that the assignment to Mrs. Andrena Moses, of which notice was not given to the accountants until after the assignment to the United Security Life Insurance Company must be postponed accordingly.   But for this, her assignment could not have been impeached ; for while it is true the testimony in support of it failed to show the payment of the entire sum

called for as the consideration, an assignment, even voluntary, by a husband to his wife, he not being indebted at the time and not contemplating an engagement in a hazardous business, is perfectly valid, though for obvious reasons such as assignment, as against a subsequent bona fide purchaser from the husband, for value, should be complete in every particular and notice required as an essential for this purpose.

Exceptions to the adjudication were dismissed by the court.

*Error assigned* was in dismissing exceptions to adjudication.

*Samuel Dreher Matlack*, with him *Albert L. Moise*, for appellant.—The first of two successive assignees claiming under the same assignor is entitled to preference, although no notice of the assignment be given to the debtor, trustee, or other depositary of the fund, or to the second assignee, until after notice of the second assignment has been given to the depositary; and this whether the first assignment is absolute or as collateral security: Donley v. Hays, 17 S. & R. 400; Betz v. Heebner, 1 P. & W. 280; Wethrill's App., 3 Grant, 281; McClelland v. Myers, 7 Watts, 160; Coon v. Reed, 79 Pa. 240.

The above cases recognize the fundamental maxim that first in time is, in general, first in right, or, as between equal equities the elder must prevail: Broom's Legal Maxims, *357; Bispham's Eq. sec. 45; Pomeroy's Eq. sec. 718; Adams's Eq. *162; 2 White & Tudor's Leading Cas. 1672; Chew v. Barnet, 11 S. & R. 389; Reed v. Dickey, 2 Watts, 459; Kramer v. Arthurs, 7 Pa. 165.

The Pennsylvania decisions recognize only one purpose of notice to the debtor party of an assignment, namely, the protection of the debtor himself: Bury v. Hartman, 4 S. & R. 175; Forster v. Carson, 159 Pa. 477.

That an assignment is perfected without notice to the debtor is also shown by the cases as to successive assignments of mortgages and judgments: Fisher v. Knox, 13 Pa. 622; Campbell's Appeal, 29 Pa. 401; Fraley's Appeal, 76 Pa. 42; Henry v. Brothers, 48 Pa. 70; Foster v. Carson, 159 Pa. 477.

The rule that notice of an equitable assignment is unnecessary to protect the rights of the assignee against subsequent as-

signments by the assignor is supported by so great a majority of the American decisions that it must be regarded as the American doctrine : Jones on Pledges and Collateral Securities (1901), secs. 136, 137 ; 2 White & Tudor's Leading Cas. part 2, page 1665 (Hare & Wallace's notes) ; Adams's Eq. * 161 (American note) ; Muir v. Schench, 3 Hill, 228 ; Bush v. Lathrop, 22 N. Y. 535 ; Williams v. Ingersoll, 89 N. Y. 508 ; Fortunato v. Patten, 147 N. Y. 277 (41 N. E. Repr. 572) ; Niles v. Mathusa, 162 N. Y. 546 (57 N. E. Repr. 184) ; Putnam v. Story, 132 Mass. 205 ; Thayer v. Daniels, 113 Mass. 129 ; Kennedy v. Parke, 17 N. J. Eq. 415 ; Board of Education v. Duparquet, 50 N. J. Eq. 234 (24 Atl. Repr. 922) ; Hawk v. Ament, 28 Ill. App. 390 ; White v. Wiley, 14 Ind. 496 ; Robeson v. Roberts, 20 Ind. 155 ; Tingle v. Fisher, 20 W. Va. 497 ; Meier v. Hess, 23 Ore. 599 (32 Pac. Repr. 755) ; MacDonald v. Kneeland, 5 Minn. 352 ; Patterson v. Rabb, 38 So. Car. 138 (17 S. E. Repr. 463) ; McCrum v. Corby, 11 Kan. 464 ; Krapp v. Eldridge, 33 Kan. 106 (5 Pac. Repr. 372) ; Talbot v. Cook, 7 T. B. Monroe (Ky.), 433 ; White v. Prentiss, 3 T. B. Monroe (Ky.), 449 ; Gill v. Clagett, 4 Johnson (Md. Ch.), 153 ; Seligman v. Ten Eyck, 49 Mich. 104 (13 N. W. Repr. 377) ; Howell v. Medler, 41 Mich. 641 (2 N. W. Repr. 911) ; Porter v. Dunlap, 17 Ohio St. 591 ; Copeland v. Manton, 22 Ohio St. 398 ; Noble v. Smith, 6 R. I. 446 ; Northam v. Cartright, 10 R. I. 19.

Where the thing assigned is an interest in futuro, equity gives effect to the assignment by treating it as an agreement to assign, to be specifically enforced when the thing comes into existence.   In the meantime, the assignor is a trustee for the assignee : 1 Beach's Modern Eq. sec. 328 ; Nesmith v. Drum, 8 W. & S. 9 ; Noble v. Thompson Oil Co. 79 Pa. 354 ; East Lewisburg Lumber Co. v. Marsh, 91 Pa. 96 ; Ruple v. Bindley, 91 Pa. 296 ; Stewart v. Neely, 139 Pa. 309 ; Simon's Estate, 9 D. R. 59.

*Henry LaBarre Jayne,* for appellee.—The successive assignees of an obligation rank as to their title, not according to the dates at which the creditor assigned his rights to them respectively, but according to the dates at which they gave notice to the party to be charged : Ryall v. Rowles, 1 Vesey, 348 ; Dearle v. Hall, 3 Russell, 1 ; Judson v. Corcoran, 17 How. 612 ;

Pickering v. Ilfracombe Ry. Co., L. R. 3 C. P. 235; Fisher v. Knox, 13 Pa. 622; Campbell's App., 29 Pa. 401; Fraley's App., 76 Pa. 42; Pratt's App., 77 Pa. 378; Welsh v. Bekey, 1 P. & W. 57; Wetherill's App., 3 Grant, 281; Metzgar v. Metzgar, 1 Rawle, 227; Blair v. Mathiott, 46 Pa. 262; McClelland v. Myers, 7 Watts, 160; Mott v. Newark German Hospital, 55 N. J. Eq. 722 (37 Atl. Repr. 757).

OPINION BY MR. JUSTICE BROWN, May 4, 1903:

On July 2, 1895, H. Cleremont Moses, a nephew of Henry M. Phillips, assigned to his wife, Andrena Moses, $15,000 of his interest in his uncle's estate. On February 28, 1899, he and his brother, Altamont, executed a joint assignment of their interests in the estate to the United Security Life Insurance & Trust Company of Pennsylvania for $60,000. Notice of this second assignment was at once given to the accountants by the assignee, and to it the court below awarded the share of H. Cleremont Moses in decedent's estate, on the ground that, though the assignment to Mrs. Andrena Moses was first in time, as she had not given the accountants any notice of it until July 23, 1901, it was postponed to that held by the appellee.

Whether, as between successive assignees of a fund in the hands of a third person, that assignee, without regard to the date of his assignment, who first gives the debtor notice of it, is entitled to be first paid, is a question upon which the American decisions cannot be reconciled. In England it is well settled that the claims of competing assignees of a fund rank, as between themselves, not in the order of the dates of the assignments to them, but according to the dates when they respectively give notice to the debtor of their assignments: Dearle v. Hall, and Loveridge v. Cooper, 3 Rus. 1–38; Pollock on Contracts, 209 (2 Am. from 4th Eng. ed.). The Supreme Court of the United States seem to have adopted the same view: Judson v. Corcoran, 17 How. 612; Spain v. Hamilton's Admr., 1 Wallace, 604. To review the conflicting views entertained by the courts of our different states would needlessly consume pages. With us the question does not seem ever to have been definitely settled. The learned auditing judge, sustained by the court in banc, adopted the rule, that the assignee who first gives notice has the first right to participate in the assigned fund.

In adopting this as the better rule, he reasoned by analogy, saying what all of us now approve: "The analogies with regard to sales of personal property in possession are certainly in favor of the view taken in the decisions last referred to, the vendee, in such case, being required for the protection of subsequent purchasers, to take possession, to the exclusion of the vendor, where the property is capable of actual possession, or by assuming such open ownership as the case admits of, where it is not. Why should a different rule apply to purchasers of choses in action? Why should the purchaser not be required to do all that lies in his power to make it impossible for the assignor to commit a fraud or to do an injury to subsequent purchasers, relying on his integrity and having no means of knowing that he has ceased to be the owner except by inquiry of the person in whose hands the fund is? The failure to give notice to such person puts it in the power of the assignor to do this wrong, and the consequences of the failure ought, therefore, to be upon him who commits it."

As in conflict with the view entertained by the court below, stress seems to be laid by counsel for appellant on Chew v. Barnet, 11 S. & R. 389; but the general principle there announced applies to a state of facts very different from those here involved. Chew, as the vendee of Wilson, had acquired from the latter nothing but an equitable estate in the land purchased, because at the time Wilson sold he did not hold the legal title. Subsequently, when that title was conveyed to him, he gave a purchase money mortgage to his vendor, and, on a sheriff's sale upon the same, it was simply decided that the title of the sheriff's vendee was superior to that of Chew, just as the legal title of Wilson's vendor had all the time been superior to that of the equitable title conveyed to Chew. The opinion in that case was written by GIBSON, J., who, twenty-five years afterwards, as Chief Justice, in Fisher v. Knox, 13 Pa. 622, very clearly indicated how he would have decided the present question, if it had then been before him: "The maxim prior in tempore potior in jure, holds, it is true, wherever it has not been inverted by enactment, as it has been by the recording laws, so far as it regards conveyances of land, or where the benefit of it has not been lost by misconduct or imprudence; but it must not be allowed to protect a party who has neglected a requisite pre-

caution to protect from imposition those who may come after him. That a man is bound to enjoy his property so as to do no injury to another which can be prevented, is also a maxim entirely consistent with the preceding one, and equally potent. It contains the ruling principle of an extensive range of cases, and among other cases of injury from negligence. . . . Was there not on the part of the prior assignee in these instances culpable indifference to the interest of others? Though no law requires such an assignment to be docketed, the practice to mark the judgment to the use of the assignee is universal, and it ought to have been pursued here; for no prudent purchaser of a judgment invests his money in it before the record has been inspected. From what else could he derive information? He has nothing for it, but the honor of the assignor; and anyone who leaves it in the power of another to deceive, may be said to collude with him beforehand. Certainly, a chancellor would not execute an equitable assignment in his favor." Campbell's Appeal, 29 Pa. 401, and Pratt's Appeal, 77 Pa. 378, are in harmony with what was said in Fisher v. Knox.

Business transactions constantly require the assignments of choses in action. In many instances personal credit cannot be maintained in any other way, and for assignees who purchase in good faith there ought to be protection. None is found in the recording act, but a measure of it ought not, on that account, to be withheld if it can be extended by courts of equity on equitable principles. The protection invoked by the appellee is against the latent equity of the appellant. If it had been informed of this prior assignment, it is not likely it would have taken the second one from the assignor, who failed to say anything about the first when he made the second. Protection can hardly be expected from an assignor who will sell twice what he knows he has a right to sell but once, for, if conscienceless enough to make a second sale, he will conceal the first in his scheme to cheat one or the other of his assignees. Protection can come only from him who owes the money and who, by notice to him, may be able to give protection. He is a mere stakeholder, and it is immaterial to him whom he pays. There is no reason why he should not be frank with a prospective purchaser of the whole or a portion of what he owes, or that, upon inquiry from such an one, he should conceal notice of any other

prior purchase or assignment, if notice of it was given him. If it be understood that each assignee of a fund, or a portion of it, can protect himself against subsequent assignees only by giving immediate notice to the debtor, such notice will be given and, when given, the instances will be very rare when subsequent assignees are imposed upon. With the question now fairly before us, we adopt and announce as the only safe rule that, if an assignee fails to give notice to the person holding the fund assigned to him, a subsequent assignee, without notice of the former assignment, will, upon giving notice of his assignment, acquire priority. "By such notice, the legal holders are converted into trustees for the new purchaser, and are charged with the responsibility towards him; and the cestui que trust is deprived of the power of carrying the same security repeatedly into the market, and of inducing third persons to advance money upon it, under the erroneous belief that it continues to belong to him absolutely, free from encumbrances, and that the trustees are still trustees for him and no one else. That precaution is always taken by diligent purchasers and encumbrancers; if it is not taken, there is neglect:" Dearle v. Hall, supra. This rule is recognized and approved by the best text writers: Story's Equity Jurisprudence, secs. 1035a, 1047; Beach on Modern Equity Jurisprudence, sec. 344; Pomeroy on Equity Jurisprudence, sec. 695; Bispham's Principles of Equity, secs. 168, 169. In the last the learned text-writer says: "The decisions, however, in favor of the English rule, appear to be based on the more correct view of the law." As the appellee is claiming under the assignment to it, and not under the attachment issued by it, the second question raised on the appeal need not be considered. Appeal dismissed at appellant's costs, and as to her the decree is affirmed.