## Dunbar, to use, Appellant, *v*. Mercer.

Argued April 28, 1937.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Burtt Harris,* for appellant.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellee.

OPINION BY PARKER, J., July 15, 1937:

This action in assumpsit by J. F. Dunbar, to the use of N. F. Arble, against H. Fred Mercer, Esq., was tried before a jury and at the conclusion of the trial the court directed a verdict for the defendant. The use plaintiff, the appellant, complains of the refusal of his motion for a new trial contending that he presented sufficient evidence to support a verdict.

The plaintiff, by the admissions contained in the affidavit of defense and the testimony of defendant called as on cross-examination, supported the facts alleged in the statement of claim. We will first detail

those facts. J. F. Dunbar, the legal plaintiff, had a claim against Avey & Irish on which he expected to realize a large sum of money. He had employed H. Fred Mercer, the defendant, a prominent member of the Allegheny County Bar, to prosecute the claim and an action in assumpsit had been instituted in common pleas at No. 1439 October Term, 1931. On May 29, 1934, Dunbar, being indebted to N. F. Arble, the use plaintiff, in the amount of $2,142, assigned to Arble "sufficient money out of any sum recovered by reason of or verdict in a suit at No. 1439 Oct. Term 1931" to satisfy the claim of $2,142, and directed his attorney, H. Fred Mercer, Esq., "to withhold said sum recovered in the above case and make payment thereof to N. F. Arble direct." Mercer, in reply to a notice of the assignment, gave Arble the following writing: "And now to wit May 29 1934 service of a true and correct copy of the above assignment is accepted, with the understanding that my fee comes first and the claim of N. F. Arble is secondary thereto and will only be paid from balance after fee is paid. (Signed) H. Fred Mercer Atty, for J. F. Dunbar." On October 23, 1934, the suit against Avey & Irish was compromised for $4,000 and, after the payment of the attorney fees due and a small item, now of no importance, Dunbar placed in the hands of Mercer the balance of $2,360. On October 25, 1934, Mercer paid Arble $642.60. Mercer having refused to pay Arble any further sum, this suit was brought to recover the unpaid balance of the $2,142, or $1,499.40.

The defense set forth in the defendant's answer was, in substance, that defendant was acting only as attorney for Dunbar; that prior to the assignment to Arble and receipt of notice by Mercer of such assignment, Dunbar had executed two similar assignments affecting the same fund, one to Interstate Collateral Loan Company on August 11, 1932, for $1,010, and the other to the receiver of South Highland Apartments, Inc., on

December 28, 1933 for $707; that he had received notice of these assignments at about the time that they were respectively executed and long before the Arble assignment; that, in addition to such assignments, Dunbar was indebted to others, he was insolvent, and bankruptcy proceedings were threatened; that at a conference at which Dunbar and Arble were present, after the compromise with Avey & Irish was effected, Arble, in view of the prior claims and the threatened bankruptcy, agreed to accept thirty per cent of his claim, or $642.60, which was paid to him and which sum was within a few cents of the balance which would remain if the prior claims were paid in full. Evidence, offered as part of plaintiff's case, was produced tending to support all of the allegations in the affidavit of defense. Arble, however, denied that he made a compromise of his claim or agreed to accept thirty per cent of his claim and asserted that the payment made to him was only on account.

It was also developed as a part of plaintiff's case that after the partial payment to Arble the claim of the Interstate Collateral Loan Company was compromised for $250 and that of the South Highland Apartments, Inc., for $212; that there was a fourth claim secured by an assignment and for which an attachment was issued naming Mr. Mercer as garnishee which was compromised by Mercer paying the sum of $650; and that the balance of about $600 was returned by Mercer to Dunbar.

Mr. Mercer, on cross-examination, testified in part with reference to the claim of the Interstate Collateral Loan Company as follows: "I knew when I took the case that there was an assignment, an outstanding claim against anything that might come into my hands and I was in duty bound to see that was taken care of, because the attorney asked me to take care of it...... Q. You never accepted service of the original, did you?

A. No, sir, I never accepted it, but I gave my word of honor to Mr. Duff that I would take care of it. Q. You did not give him any written assurance? A. I didn't need to give him any written assurance, I told him I would look out after his claim if any money came into my hands. I would take care of it or talk to him about it and take care of it to see that the loan was paid, before I knew Dunbar." There was nothing to indicate an agreement by Mr. Mercer to be bound by the assignment of the Arble claim prior to the time that the balance received from Avey & Irish was placed in Mr. Mercer's hands by Dunbar.

The court below, in an opinion filed, and the appellee in his argument relied upon the fact that the assignment was a partial assignment not accepted by Mr. Mercer and therefore not enforceable, citing *Gordon v. Hartford Sterling Co.*, 319 Pa. 174, 179 A. 234, and *Concrete Form Co. v. W. T. Grange Construction Co.*, 320 Pa. 205, 181 A. 589. It is well settled that in the case of a partial assignment the debtor is not bound thereby unless he gives his consent but, as we see it, that principle has no application here. We will discuss that feature of the case later.

The court below disposed of the case as a matter of law by directing a verdict for the defendant, and the appellant contends there was involved an issue or issues of fact which should have been submitted to the jury. Our present task is to determine whether plaintiff has a valid cause of action and whether the appellant, if he is correct in his legal position, has produced sufficient evidence to support the claim. As we are convinced that the reasons given in support of the judgment by the court below and the appellee are not sound, it becomes necessary for us to determine first what was the main issue involved and then examine the proofs for the purpose of ascertaining whether they show conclusively a cause of action, a question for the jury, or no cause of

action. We will then consider the affirmative defenses raised.

The assignment to Arble was of a claim against Avey & Irish and not of a claim against Mercer. When it was delivered Mercer owed nothing to Dunbar, the assignor. While the paper directed Mercer to withhold any sum he might later receive and pay to Arble $2,142, there was not, at least prior to the receipt of the $2,360 by Mercer from Dunbar, any basis for a claim by Arble against Mercer. Mercer, on receiving notice of the assignment, made no commitments and was not in any way affected by the assignment unless he received the fund. He was attorney for Dunbar and not for Arble. Notwithstanding the Arble assignment, Mercer might have allowed Dunbar to receive the proceeds of the compromise directly from Avey & Irish or, as between Mercer and Dunbar, Dunbar might have paid Mercer his fees and insisted on receiving the money directly from Avey & Irish. At that time Mercer owed no duty to act for Arble; he was attorney for Dunbar.

However, when the settlement was made with Avey & Irish a new situation was created. The plaintiff showed by the uncontradicted testimony of Mercer called as on cross-examination that Avey & Irish settled by a check October 23, 1934, drawn to the order of "H. Fred Mercer, Atty for James Francis Dunbar"; that the check was indorsed by the payee and by "James Francis Dunbar," and that the bank paid the proceeds, $3,960, to Dunbar. He then testified: "Mr. Dunbar put it [the money] in his pocket and came up to my office and we went into Mr. Unkovic's office and he paid me and he and Mr. Unkovic tried to spread the money over as many creditors as they could to try to let them all in on it." Mr. Unkovic was an attorney associated with Mr. Mercer. While it was not directly testified that the $2,360 was placed in Mr. Mercer's hands, there was sufficient oral and documentary evidence to support the

inference that it was so left. Out of this money Mercer answered the attachment execution, paying on it $650, he paid to the prior assignees $250 and $212 respectively, and the balance was paid by Mercer to Dunbar. These facts having been testified to by Mr. Mercer and not contradicted, we will assume as an admitted fact that Mercer did receive into his hands the $2,360.

This brings us to what we regard as the main question involved. Was the $2,360 placed in the hands of Mercer in compliance with the three assignments given by Dunbar and did Mercer accept the money and assume an obligation to distribute that sum in accordance with such assignments? The defendant contends that he did not, but that he was merely acting as the attorney or agent for Dunbar in the same capacity as was indicated by his acceptance of notice of the assignment. Mercer had written notice of and copies of all three assignments and had not indicated in any way that if he did receive the money he would not act as trustee to make distribution. In the case of the claim of Interstate Collateral Loan Company, he testified that he "was in duty bound to see that was taken care of" and that he told the attorney for that company that he "would take care of it to see that the loan was paid." Arble testified that on October 25, 1934, he was summoned to Mr. Mercer's office "in order to try to effect a settlement of my [his] claim." Mr. Dunbar was present at this conference and he and Mr. Unkovic, an associate of Mr. Mercer, discussed the matter of settlement with Arble. It resulted in $642.60 being paid to Arble. Mr. Mercer later, with the assistance of Dunbar, made settlement with and paid sums in compromise of the two prior claims. In addition, Mr. Mercer made settlement of and paid the fourth claim for which an attachment execution was issued against him personally. In the face of these facts, we cannot say as a matter of law that Mercer was acting solely as attorney

for Dunbar and that he did not accept responsibility as trustee for the distribution of the proceeds in accord with the assignments.

The defendant, in support of his contention, refers to the written receipt given by Arble as follows: "Pittsburgh, Pa., Oct. 25, 1934 Received of J. F. Dunbar Six hundred forty-two and 60/100 Dollars  Payment on a/c note dated 5-28-34 in Sum of $2142.  N. F. Arble." This refers to the receipt of the money from Dunbar and not from Mercer, although it must be taken into account that it was Dunbar's money and it was Dunbar's obligation which was being paid.  Mr. Mercer also calls attention to the fact that Dunbar was present when these settlements were made, that he was primarily attorney for him, and that it would be consistent with such relation of attorney and client for Mr. Mercer to be interested in protecting Dunbar.  The parties, Arble on one hand and Mercer and Dunbar on the other, do not agree as to the matters that were discussed on October 25, when the payment was made to Arble.  The proofs with reference thereto were partly oral and there are inferences to be drawn from such conversations as to the capacity in which Mercer acted.  Such being the case, we are of the opinion that the question of Mercer's relation to the parties involved was for the jury.

It is now apparent that the principle applicable to partial assignments relied on by the court below as a reason for giving binding instructions is not here involved.  Avey & Irish could have disregarded the assignments, assuming that that firm did not agree to be bound by them.  This does not apply to Mr. Mercer for if he accepted the trust and undertook to make distribution, the very fact of such acceptance was an agreement to be bound by the partial assignments.  In that event, the relationship of Mercer to the fund was transformed into one of trustee with responsibility toward

the assignees: *Phillips's Est. (No. 3)*, 205 Pa. 515, 524, 55 A. 213.

If the evidence on a second trial is the same as on the former one, and the jury find for plaintiff on the main issue, it will then be for them to consider the affirmative defense. As the record now stands, it is clear* that in any view of the case the claims of Interstate Collateral Loan Company and South Highland Apartments, Inc., were prior to those of Arble, and that the limit of plaintiff's possible recovery would be the difference between $2,360 and the sum of the two amounts paid on the prior claims, since the two claims first named were prior in time to the Arble claim and the assignees gave notice of their claims prior to notice from Arble.

Mr. Mercer contends that in view of existing disputes and threatened bankruptcy, Arble agreed to accept $642.60 as his share of the fund in defendant's hands. If the jury find that Arble so agreed, then Arble is not entitled to recover anything, but that question is for a jury. There is a clear dispute between Mercer and his witnesses and Arble as to this matter. There is evidence which will support a valid agreement to accept the sum paid in satisfaction of any claim on the fund in Mercer's hands or against Mercer. If the evidence is believed, there was certainly a bona fide dispute or controversy as to how much Arble was entitled to receive out of this fund. The prior claims aggregated $1,717, which left $653; Dunbar was insolvent and bankruptcy proceedings were threatened. Arble accepted in compromise the sum of $642.60, if Mercer's testimony is accepted by the jury, by reason of the existence of a substantial dispute as to what he was entitled to receive. If the jury adopts Mr. Mercer's contention, Arble, by reason of a real and substantial dispute as to what sum he would receive accepted $642.60 as his share of the money in the hands of Mr.

Mercer and is not entitled to recover anything more from Mercer.

Judgment reversed and a new trial granted.