In re **QUAKER CITY SHEET METAL CO.**
Appeal of **KLAUDER.**

No. 7893.

Circuit Court of Appeals, Third Circuit.

Argued March 18, 1942.

Decided Aug. 12, 1942.

Bertram Bennett, of Philadelphia, Pa. (Jenkins, Bennett & Libby, of Philadelphia, Pa., on the brief), for appellant.

William E. Mikell, Jr., of Philadelphia, Pa. (Saul, Ewing, Remick & Harrison, of Philadelphia, Pa., on the brief), for appellee Dearden.

Lewis H. VanDusen, Jr., of Philadelphia, Pa. (James McMullan, and Drinker, Biddle, & Reath, all of Philadelphia, Pa., on the brief), for appellee, Corn Exchange Nat. Bank & Trust Co.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

At the beginning of 1940, Quaker City Sheet Metal Company was in financial difficulties and unable to complete its contracts and meet its payroll for lack of working capital. Between January 19, 1940 and April 5, 1940 the Corn Exchange National Bank and Trust Company made several loans to the company. On April 12,

1940 Edward C. Dearden, Sr. made a loan to the company. Concurrently with each loan and as collateral security for it the company assigned contracts and the accounts receivable arising from the contracts. The assignments were made in Pennsylvania, with the knowledge and consent of a creditors' committee which represented most of the general claims against the company. Neither the bank nor Dearden gave notice of the assignments to the parties who owed the accounts receivable. On April 18, 1940 an involuntary petition in bankruptcy was filed against the company and on May 7, 1940 the company was adjudicated a bankrupt. At this time the company was indebted to the bank in the sum of $7,954.51 and to Dearden in the sum of $1,550. The bank filed a proof of claim as a secured creditor, to which the trustee in bankruptcy objected. An issue was framed upon a petition for reclamation filed by Dearden. Both claims were passed upon by the referee in bankruptcy who allowed them as secured claims. The District Court for the Eastern District of Pennsylvania entered a decree affirming the orders of the referee. The trustee in bankruptcy has taken this appeal. The trustee concedes the indebtedness but contends that the assignments are voidable preferences by virtue of subdivisions a and b of section 60 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 96, subs. a, b.

We are primarily concerned with the provisions of subdivision a of Section 60, which are as follows: "a. A preference is a transfer, as defined in this Act [title], of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter X, XI, XII, or XIII of this Act [chapter 10, 11, 12, or 13 of this title] the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII, or XIII of this Act [chapter 10, 11, 12 or 13 of this title], it shall be deemed to have been made immediately before bankruptcy."

It will be noted that the subdivision comprises two sentences. The first lays down the criteria for determining whether a transfer is preferential. The second sentence provides that for the purposes of subdivision a, inter alia, a transfer shall not be deemed to have been made until it has been perfected as against bona fide purchasers from and creditors of the debtor.

It will be seen that one of the criteria laid down by the first sentence of subdivision a for determining whether a transfer is to be treated as a preference is that it is "for or on account of an antecedent debt." The question with which we are primarily concerned in this case involves the meaning of this phrase. The question is this. In determining whether a debt is antecedent to a transfer made on account of it are we to apply the rule laid down in the second sentence as to when a transfer is to be deemed as having been made? In other words, is a debt to be treated as antecedent to a transfer actually made contemporaneously but not perfected as against purchasers and creditors of the debtor until a later time? We think that a fair construction of the statutory language requires an affirmative answer to this question. The rule which the second sentence of subdivision a lays down as to the time when a transfer is to be deemed to have been made is stated, to be "for the purposes of [subdivision] a," inter alia. It is thus clear that the rule is intended to apply to the provisions of the first sentence of that subdivision insofar as they involved questions having to do with the time of making a transfer. There is no indication that its application to the first sentence is to be restricted to the mere determination of whether a transfer is made while the debtor is insolvent and within four months of bankruptcy. On the contrary, it is obvious that the time of the making of a transfer is the essential element in determining whether a debt on account of which it is made was antecedent to it.

We conclude that the rule laid down in the second sentence of subdivision a of Section 60 for determining the time of the making of a transfer applies to the determination of the question whether the transfer was made for or on account of an ante-

cedent debt. In this conclusion we are supported by students of the act who have forcefully pointed out that the purpose of Section 60, sub. a, as amended by the Chandler Act of 1938, was to strike down secret liens even though given for a present consideration.[1] We recognize that in the case of Adams v. City Bank & Trust Co., 1940, 115 F.2d 453, 134 A.L.R. 1215, the Circuit Court of Appeals for the Fifth Circuit reached a contrary conclusion but for the reasons which we have given we are unable to follow the construction of the statute made in that case.

There remains for consideration the question whether under the law of Pennsylvania subsequent bona fide assignees or attaching creditors of the company could have acquired rights to the accounts receivable here in question superior to the rights of the bank and Dearden under their prior assignments in view of the fact that the latter gave no notice of their assignments to the persons owing the accounts. In other words, since the bank and Dearden gave no such notice prior to bankruptcy, must the transfers to them be deemed under the provisions of Section 60, sub. a, to have been made immediately before bankruptcy and, therefore, for antecedent debts? If so, it is clear that, since an assignment is a transfer within the definition of Section 1(30) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 1(30), their assignments were preferences which were voidable by the trustee under subdivision b of Section 60 if the other criteria laid down in Section 60 were present.

The trustee urges that under the law of Pennsylvania a subsequent bona fide purchaser of the accounts receivable from the company could have acquired rights to the accounts superior to those of the bank and Dearden provided only that he gave notice before they did.[2] In support of this proposition the case of In re Phillips' Estate (No. 3), 1903, 205 Pa. 515, 55 A. 213, 66 L.R.A. 760, 97 Am.St.Rep. 746, is cited. That case involved a contest between successive assignees of a fund in the hands of a third person. The court found in favor of the subsequent assignee, adopting the rule that

(205 Pa. at page 524, 55 A. at page 216) "if an assignee fails to give notice to the person holding the fund assigned to him, a subsequent assignee, without notice of the former assignment, will, upon giving notice of his assignment, acquire priority." It is argued by the bank and Dearden that the effect of this ruling is neutralized by another decision in the same estate handed down by the Pennsylvania Supreme Court on the same day, In re Phillips' Estate (No. 4), 1903, 205 Pa. 525, 55 A. 216, 97 Am.St.Rep. 750, in which the court awarded priority to an assignee who had not given notice over a subsequent assignee who had given notice. It appeared that a claimant to a share in a decedent's estate had transferred his interest to successive assignees. The first did not give notice—the second did. In the period intervening between the two assignments a creditor of the claimant served the accountants with a writ of foreign attachment. The court awarded the creditor priority over the later assignee because his attachment was first in time. His lien, however, was subordinated to that of the first assignee. The court reasoned that as between the assignor and the assignee the assignment was valid whether with or without notice, that the creditor's right rose no higher and that he could attach only that which the assignor had left after the assignment.

It will be seen that the decision in Re Phillips' Estate (No. 4) involved the determination of the rights of an attaching creditor. The court's ruling was based upon the proposition that an attaching creditor could not secure rights superior to those of a prior assignee even though the latter had not given notice. The case, however, did not in any way modify the ruling in Re Phillips' Estate (No. 3) as to the position of a subsequent assignee who was first in giving notice. The rule as to the time of making a transfer, which is laid down in the second sentence of Section 60, sub. a, cannot operate to fix that time as of the time of actual transfer unless two bases for such operation are present. It must appear to have then been so far perfected

---

[1] McLaughlin, Aspects of the Chandler Bill to Amend The Bankruptcy Act (1937), 4 U. of Chicago L.Rev. 369, 388; Mulder, Ambiguities in the Chandler Act (1940) 89 U. of Pa.L.Rev. 10, 25; 3 Collier on Bankruptcy, 14th Ed., § 60.48.

[2] The Pennsylvania Act of July 31, 1941, P.L. 606, § 1, 69 Pa.P.S. § 561,
which dispenses with the necessity for the giving of notice of an assignment of accounts receivable if a record of the assignment is made upon the books of account of the assignor, can have no bearing upon the assignments in this case because they were made prior to the effective date of that act.

that (1) no bona-fide purchaser and (2) no creditor could thereafter have acquired superior rights in the property transferred. In the case before us it is immaterial that In re Phillips' Estate (No. 4), which deals with the rights of creditors, provides one of the bases for the operation of the rule in favor of the date of actual transfer since In re Phillips' Estate (No. 3), which fixes the rights of purchasers does not provide the other basis. As we have said, the statute requires the presence of both. Consequently if, as here, one is absent, the date of transfer must be deemed to be postponed to the later date fixed by the second sentence of subdivision a, in this case the date of bankruptcy. It follows that the assignments to the bank and Dearden must be deemed for the purposes of the administration of the company's estate in bankruptcy to have been made for or on account of antecedent debts of the company and must be treated as preferences voidable at the instance of the trustee in bankruptcy if the other elements of a voidable preference set forth in Section 60 are present.

The decree of the district court is reversed and the cause is remanded, with directions to take such further proceedings therein as may be consistent with this opinion.

JONES, Circuit Judge (dissenting).

The construction which the majority of the court place upon Sec. 60, sub. a of the Bankruptcy Act, as amended by the Chandler Act, seems to me to deny the intended effect of the word "antecedent" (as now employed in the act to define the nature of debt capable of furnishing the basis for a preference) and, at the same time, to give an effect to the provision with respect to the presumed time of transfer under certain specified conditions, contrary to the intent of that provision.

The Chandler Act amendment of Sec. 60, sub. a, was the first time that the requirement of a debt's antecedency was prescribed by a bankruptcy statute in relation to the establishment of a preference.[1] True enough, such had actually been the law prior to the passage of the Chandler Act, but only by judicial construction. What, therefore, had been the law in material regard, the Chandler Act redeclared by providing in Sec. 60, sub. a, that "A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt * * *." The Chandler Act made no new or special definition of "antecedent debt" but left the meaning of that term to the law's prior understanding of it. In these circumstances I am unable to perceive how it can be inferred that Congress intended to transform a debt actually incurred for a present consideration of full value into an antecedent debt simply because a further provision of Sec. 60, sub. a, postpones to "immediately before bankruptcy" the time of a transfer actually made contemporaneously with the incurrence of the debt but not perfected under local law against a *bona fide* purchaser and creditors of the transferor.

With a preference unqualifiedly defined, as above quoted, as a transfer for an antecedent debt (the transferor being insolvent and within four months of bankruptcy), it was then provided by the succeeding sentence of Sec. 60, sub. a, that "For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before bankruptcy."

From the foregoing provision the majority conclude (and they have support in the views of learned authors[2]) that "a debt is to be treated as antecedent to a transfer actually made contemporaneously but not perfected as against purchasers and creditors of the debtor until a later time." And so, according to the prevailing argument, the entire transaction of contemporaneous loan and transfer is split apart and the

---

[1] 3 Collier on Bankruptcy, 14th Ed., par. 60.19, p. 818.

[2] See McLaughlin, Aspects of the Chandler Bill to Amend the Bankruptcy Act (1937) 4 University of Chicago Law Review 369, 388; Mulder, Ambiguities in the Chandler Act (1940) 89 University of Pennsylvania Law Review, 10, 25; 3 Collier on Bankruptcy, 14th Ed., par. 60.48, p. 962 et seq. But see contra 4 Remington on Bankruptcy, 4th Ed., § 1717 (text and appendix).

unperfected [3] transfer is "deemed to have been made immediately before bankruptcy", as Sec. 60, sub. a, provides, while the loan for which the transfer was contemporaneously made retains the original date of the actual transaction and thus becomes antecedent in relation to the time of the transfer, as statutorily presumed under the attending circumstances. To so hold seems to be a striking instance of lifting oneself by one's bootstraps and terminates in a result which I do not think Sec. 60, sub. a, was intended to bring about. When the time of the transfer is brought to "immediately before bankruptcy" by virtue of Sec. 60, sub. a, because of a want of perfection thereof as against a bona fide purchaser and creditors of the transferor, the fact as to whether the unperfected transfer was for an antecedent debt or for a debt contemporaneously incurred is still to be reckoned with on the basis of actuality. It will be observed that Sec. 60, sub. a, does not strike down an unperfected transfer but merely moves by legal presumption, the time of its occurrence to "immediately before bankruptcy".

In my opinion, the provision in Sec. 60, sub. a, with respect to the presumed time of transfer under the specified conditions was incorporated in the Chandler Act in order to bring constructively within the four months of bankruptcy (and thus render adjudicable on that basis) all unperfected transfers made while the debtor was insolvent more than four months prior to bankruptcy. Before the Chandler Act, the law did not reach such earlier transfers by an insolvent debtor. But under Sec. 60, sub. a, as now amended, any unperfected transfer by an insolvent can be assailed as a preference if, when actually made, the consideration therefor was an antecedent debt. So construed, the provision in Sec. 60, sub. a, relating to the legally presumed time of transfer, works an important change in the law but it has nothing to do

with determining the relative date of the incurrence of the debt for which an unperfected transfer was contemporaneously made. Whether the unperfected transfer, when made, was made on account of an antecedent debt or for a present consideration of full money's worth remains the criterion for determining whether the transfer constituted a preference.

What the bankruptcy law is primarily concerned with is the equitable distribution of a bankrupt's estate among creditors. A preference is the favoritism by an insolvent debtor of one creditor over others.[4] But, in order that a payment or transfer by a debtor to one creditor may amount to a preference, it is necessary that the debtor's estate be thereby depleted so that the remaining creditors cannot ratably receive commensurate shares on account of their claims.[5] A transfer therefore which does not reduce the value of a debtor's estate because he contemporaneously receives full value in exchange is not a preference. It is hardly likely that Congress intended by bringing an unperfected transfer to "immediately before bankruptcy" to constitute a preference out of a transaction which in no way depleted the debtor's estate. Bankruptcy does not disapprove of an insolvent debtor's giving security, even down to the date of bankruptcy, for a present loan of full value. Such action may possibly sustain the breath of fiscal life in a gasping debtor until complete recovery to the ultimate benefit of creditors generally. Indeed, it was in furtherance of that hope that the subject loans in the instant case were given and the transfers made as security therefor. The debtor's estate was in no way depleted but received a needed and desired present benefit. In any view, a contemporaneous transfer in such circumstances is no more a preference under the Chandler Act amendment of Sec. 60, sub. a, than it was prior to the amendment.

---

[3] The term "unperfected" as used herein should not be taken to imply that the assignments in this case were wanting in legal validity. Under local law they were binding and conclusive as to the assignor and its creditors from the time they were made. See In re Phillips' Estate (No. 4), 205 Pa. 525, 531, 55 A. 213, 66 L.R.A. 760, 97 Am.St.Rep. 746. They were, moreover, good against the world except that a subsequent bona fide purchaser without notice could have acquired rights in the assigned accounts superior to the rights of the original assignees if he was first to give notice of his acquisition to the persons owing the accounts. It was only to that limited extent that there was any want of perfection in the transfers.

[4] 3 Collier on Bankruptcy, 14th Ed., par. 60.02, pp. 750–751.

[5] See National Bank of Newport, N. Y., v. National Herkimer County Bank, 225 U.S. 178, 184, 32 S.Ct. 633, 56 L. Ed. 1042; also 3 Collier on Bankruptcy, 14th Ed., par. 60.19, p. 819.

Nor am I able to see how Sec. 60, sub. a, was intended, as the majority suggest, "to strike down secret liens even though given for a present consideration". The time of the making of a secret lien, if perfected under local law, is no more deemed to have been "immediately before bankruptcy" than is the time of the making of a perfected open lien. And, by the same token, an unperfected open lien is subject to the same limitation under Sec. 60, sub. a, as is an unperfected secret lien. In no sense does Sec. 60, sub. a, seek to discriminate between secret and open liens. It simply prescribes the requisites under the bankruptcy law for determining the existence of a preferential transfer. And this, it does without attempting in any way to pass disapprovingly upon what may be a valid (although secret) lien under local law.

The transfers in this case, judged on the basis of having been made "immediately before bankruptcy" (actually they were made within four months of bankruptcy), were valid, having been given as security for debts contemporaneously incurred for full present consideration. Accordingly, I should affirm the order of the District Court.